## SMITH v. CAHOON, SHERIFF.

No. 449. Argued April 22, 1931.—Decided May 25, 1931.

554

*Mr. John W. Davis,* with whom *Messrs. John E. Mathews* and *Charles H. O'Connor* were on the brief, for appellant.

*Mr. H. E. Carter* argued the cause and *Messrs. Cary D. Landis,* Attorney General of Florida, *Fred H. Davis,* former Attorney General, and *Theo. T. Turnbull* filed a brief, for appellee.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The appellant, a private carrier for hire, was arrested upon a warrant charging him with operating vehicles upon the highways in Duval County, Florida, without having obtained the certificate of public convenience and necessity, and without having paid the tax, required by Chapter 13700, Laws of Florida, 1929. At the preliminary hearing, the appellant challenged the validity of the statute, as applied to him, upon the ground that it was repugnant to the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States. The appellant was held for trial. Upon return to a writ of *habeas corpus*, the Circuit Court

of the county decided that the statute as applied to the appellant was unconstitutional, and the appellant was discharged from custody. This judgment was reversed by the Supreme Court of the State, which upheld the statute. 99 Fla. 1174; 128 So. 632. The case comes here on appeal.

The statute provides for the regulation, through the State Railroad Commission, of " auto transportation companies." These companies are thus defined in § 1 (h):

" The term ' auto transportation company ' when used in this Act means every corporation or person, their lessees, trustees or receivers, owning, controlling, operating or managing any motor-propelled vehicle not usually operated on or over rails, used in the business of transporting persons or property for compensation or as a common carrier over any public highway in this State between fixed termini or over a regular route; Provided, That the term ' auto transportation company ' as used in this Act shall not include corporations or persons engaged exclusively in the transportation of children to or from school, or any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and Salt Fish and Oysters and Shrimp from the point of production to the assembling or shipping point enroute to primary market or to motor vehicles used exclusively in transporting or delivering dairy products or any transportation company engaged in operating taxicabs, or hotel busses from a depot to a hotel in the same town or city. . . ."

Every auto transportation company as thus defined is prohibited (§ 2) from operating " any motor vehicle for the transportation of persons or property for compensation on any public highway in this State without first having obtained from the Railroad Commission a certificate that the present or future public convenience and necessity requires or will require such operation." There is an

exception in case of operation exclusively within the limits of an incorporated city or town.

Application for such " certificate of public convenience and necessity " (§ 3) must set forth certain information with respect to the applicant and proposed service. Upon hearing, the Commission may issue the certificate as prayed for, " or refuse to issue the same, or may issue the same with modification, or upon such terms and conditions as in its judgment the public convenience and necessity may require." The Commission may take into consideration various matters bearing upon the applicant's previous operation and reliability, as well as the effect that the granting of the certificate may have upon " other transportation " facilities and upon " transportation as a whole" within the territory sought to be served, and " any other matters tending to qualify or disqualify " the applicant " as a common carrier." It is further provided that, upon hearing, the certificate shall be granted " as a matter of right " to such auto transportation companies as were operating in good faith on the nineteenth day of April, 1929, over the route for which the certificate is sought, " who shall comply in full with the provisions of this Act." When application is made for a certificate " to operate in a territory or on a line already served by a certificate holder," the Commission shall grant the certificate " only when the existing certificate holder or holders serving such territory fail to provide service and facilities to the satisfaction of said Commission."

The following provision as to the giving of a bond in connection with the application for certificate is found in § 4 [pp. 353–4]:

" The Commission shall, at the time of granting a certificate to operate any transportation company for transporting persons or property, fix and determine the amount of the bond to be given by the applicant for the protection, in case of passenger vehicle, of the passengers

and baggage carried in said vehicle and of the public against injury caused by negligence of the person or corporation operating the said vehicle, and in the case of the vehicle transporting freight, for the protection of the said freight so carried and of the public against injuries received through negligence of the person or corporation operating said freight carrying vehicle; . . . The said bonds shall be conditioned to indemnify passengers and the public receiving personal injuries by any act of negligence, and for damages to property of any person other than the assured; and such bonds shall contain such conditions, provisions, and limitations as the Commission may prescribe, and said bonds shall be payable to the State of Florida, and shall be for the benefit of and subject to action thereon by any person or persons who shall have sustained an actionable injury protected thereby, notwithstanding any provisions in said bond to the contrary, and every bond or insurance policy given shall be conclusively presumed to have been given according to and to contain all of the provisions of this Act. And no certificate shall be valid until such bond has been filed and approved. . . ."

With the approval of the Commission, the applicant may file an insurance policy in lieu of bond.

The Commission is empowered (§ 5) " to fix or approve the rates, fares, charges, classifications, rules and regulations for each auto transportation company," to regulate its " service and safety of operations," to prescribe " a uniform system and classification of accounts to be used, which among other things shall set up adequate depreciation charges," to require " the filing of annual and other reports and all other data," and to supervise and regulate it " in all other matters " affecting its relationship with the traveling and shipping public.

Under § 6, every auto transportation company, as defined by the Act, must forthwith file, with its application

for a certificate, " a schedule of its rates and fares, and a time schedule of all motor vehicles operated " which are to be subject to public inspection. Rates and time schedules are to be changed only with the sanction of the Commission, and it is made unlawful for any such company to receive a greater or less charge for any service rendered than that shown by the filed schedules.

Violation of any provision of the Act is made a misdemeanor (§ 13) punishable by fine or imprisonment, or by both.

Section 14 provides for the collection of a tax from every auto transportation company to which has been granted a certificate of public convenience and necessity. This is a mileage tax graded according to the capacity of the vehicle. The tax is to be paid quarterly in advance, beginning with the issue of the certificate. Five per cent. of the moneys collected are to be used to defray the expense of the administration of the Act, and the remainder is to be distributed among the counties in proportion to the use of their highways (§ 15).

Other provisions prohibit discrimination and " free fares " except as stated.

Upon the appeal in this case, the Supreme Court of the State thus construed the statute [p. 1180]:

" The statute applies to corporations and persons who use motor propelled vehicles in the business of transporting persons or property for compensation over public highways in this State between fixed termini or over a regular route, whether such transportation for compensation is as common carriers or as carriers for particular persons under special contract; but the statute does not require private carriers to become common carriers and the provisions of the statute that are legally applicable only to common carriers are not intended to be applied to and are not applicable to corporations or persons who are not common carriers, though engaged in the transpor-

tation to which the statute refers; and the provisions of the statute that are legally applicable to private carriers for compensation, are capable of being effectuated, leaving the provisions that are legally applicable only to common carriers to be applied to such common carriers as are governed by the statute. . . . The requirements as to procuring certificates of convenience and necessity for doing the business on the highways and as to the tax imposed on the business may be reasonably applied to private carriers for compensation for the privilege of transporting for hire as a business on the public roads of the State, in the exercise of the police and taxing power of the State to conserve the proper use of the public highways and to serve proper sovereign purposes."

The state court gave no indication as to the particular provisions of the statute which were deemed to be " legally applicable " only to common carriers, or as to those which were considered to be legally applicable to private carriers, except that it was decided that the latter were bound to procure certificates and to pay the tax.

There is no controversy with respect to the status of the appellant. The Supreme Court said that " he owned and operated two motor propelled vehicles in the business of transporting property for compensation upon the public highways between fixed termini and over regular routes, all within the State, not as a common carrier but as a private carrier under special contract." From the undisputed evidence upon the preliminary hearing, it appears that the appellant was employed under an exclusive contract with the Atlantic & Pacific Tea Company in hauling its merchandise from Jacksonville to various places in Florida. He has never held himself out as a common carrier.

From statements made at the bar, it would appear that the appellant was engaged in the business above mentioned when the Act was passed and hence that he would

be entitled to a certificate, provided he complied fully with the provisions of the Act. By the terms of the Act such compliance would be necessary. The appellant did not apply for a certificate, and the principle is well established that when a statute, valid upon its face, requires the issue of a license or certificate as a condition precedent to carrying on a business or following a vocation, one who is within the terms of the statute, but has failed to make the required application, is not at liberty to complain because of his anticipation of improper or invalid action in administration. *Gundling* v. *Chicago,* 177 U. S. 183, 186; *Lehon* v. *Atlanta,* 242 U. S. 53, 55, 56; *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 553, 554. This principle, however, is not applicable where a statute is invalid upon its face and an attempt is made to enforce its penalties in violation of constitutional right. In the present instance, the appellant has been arrested and held for trial. He is in jeopardy, and the state court, entertaining his application for discharge, has denied the constitutional right asserted. The question of the validity of the statute, upon which the prosecution is based, is necessarily presented.

The statute on its face makes no distinction between common carriers and a private carrier such as the appellant. It applies, without any stated exception, to every auto transportation company within the statutory definition, and this admittedly included the appellant. It not only required an application for a certificate of public convenience and necessity but that this should be accompanied by a schedule of tariffs, and no such certificate was to be valid without the giving of a bond by the applicant for the protection both of the public against injuries and of the persons or property carried. The State Commission was explicitly vested with authority to supervise " every " auto transportation company that was embraced within the definition, to fix or approve its rates and charges, to regulate its service, to prescribe its method

of keeping accounts which should set up adequate depreciation charges, and generally to make rules governing its operations. Schedules of rates of " every such auto transportation company " were to be open to the public and all alterations in tariffs were to be subject to the Commission's control. On the face of the statute, the scheme was obviously one for the supervision and control of those carriers which, by reason of the nature of their undertaking or business, were subject to regulation by public authority in relation to rates and service. No separate scheme of regulation can be discerned in the terms of the Act with respect to those considerations of safety and proper operation affecting the use of highways which may appropriately relate to private carriers as well as to common carriers. All carriers within the Act, whether public or private, are put by the terms of the statute upon precisely the same footing. All must obtain certificates of public convenience and necessity upon like application and conditions. It is true that the statute does not in express terms demand that a private carrier shall constitute itself a common carrier, but the statute purports to subject all the carriers which are within the terms of its definition to the same obligations. Such a scheme of regulation of the business of a private carrier, such as the appellant, is manifestly beyond the power of the State. See *Michigan Pub. Util. Comm.* v. *Duke,* 266 U. S. 570, 576–578; *Frost Trucking Co.* v. *Railroad Comm.,* 271 U. S. 583, 592.

If it be said that the statute contemplated the severability of its requirements in providing (§ 18) that if any of its provisions were held to be unconstitutional, the validity of the remaining portions should remain unaffected, the answer is that no line of severance is indicated in the terms of the Act. The effect of this saving clause is merely that, if one provision is struck down as invalid, others may stand. But until such separation has been

accomplished by judicial decision, the statute remains
with its inclusive purport, and those concerned in its
application have no means of knowing definitely what
eventually will be eliminated and what will be left. This
was the situation which confronted the appellant when
obedience to the statute was demanded and punishment
for violation was sought to be inflicted.

If, ignoring the explicit comprehensiveness of their
requirements, it could be said that the provisions of the
statute should be severed, so as to afford one scheme for
common carriers and another for private carriers such as
the appellant, the result would be to make the statute,
until such severance was determined by competent author-
ity, void for uncertainty. Either the statute imposed
upon the appellant obligations to which the State had no
constitutional authority to subject him, or it failed to
define such obligations as the State had the right to impose
with the fair degree of certainty which is required of
criminal statutes. Considered as severable, the statute
prescribed for private carriers "no standard of conduct
that it was possible to know." *International Harvester
Co.* v. *Kentucky,* 234 U. S. 216, 221; *Collins* v. *Kentucky,*
234 U. S. 634, 638; *United States* v. *Cohen Grocery Co.,*
255 U. S. 81; *Weeds, Inc.,* v. *United States,* 255 U. S. 109;
*Connally* v. *General Construction Co.,* 269 U. S. 385, 391.
It is idle to say that one could take a statute of this sort,
establishing requirements binding upon private and com-
mon carriers alike, and divide its terms so as to make a
valid scheme applicable to private carriers. The legis-
lature could not thus impose upon laymen, at the peril
of criminal prosecution, the duty of severing the statutory
provisions and of thus resolving important constitutional
questions with respect to the scope of a field of regulation
as to which even courts are not yet in accord.

The construction placed upon the statute by the Su-
preme Court of the State does not avoid the difficulty.

It should be observed that this is not an action in equity where the enforcement of a statute awaits the final determination of the court as to validity and scope. There is no controversy as to the facts and the appellant has been held liable to the penalties of the Act for his disobedience to it as it stood when it was enacted. He was entitled at that time to assert his constitutional right by virtue of the invalidity of the statute upon its face. Apart from this consideration, the construction of the statute by the state court does not determine what terms of the statute are binding upon private carriers such as the appellant. The court states that " the provisions of the statute that are legally applicable only to common carriers are not intended to be applied to and are not applicable to corporations or persons who are not common carriers," and that " the provisions of the statute that are legally applicable to private carriers for compensation are capable of being effectuated, leaving the provisions that are legally applicable only to common carriers to be applied to such common carriers as are covered by the statute." But the court does not point out what provisions are "legally applicable " to private carriers. The decision thus aims to remove the constitutional objection of invalid application only by creating another constitutional objection of lack of appropriate certainty. Had the legislature written into the statute itself that it was binding upon private carriers " only so far as the provisions are legally applicable," it would have transcended the permissible limits of statutory indefiniteness.

Among the provisions of the statute binding upon those who apply for and obtain certificates of public convenience and necessity is one that a bond, or insurance policy, approved by the State Commission, shall be furnished in order to afford security for the public against injuries as well as for the protection of persons and property transported. If we leave on one side the requirement that a

certificate holder, who is a private carrier, shall give a bond or policy for the goods carried by him, irrespective of his contract with his employer whose goods he carries, and if we consider only the provision for the protection of the public with respect to the use of the highways, another constitutional difficulty is encountered, that is, of an un-. constitutional discrimination. If the provisions of the Act were treated as severable, and requirements relating to the safety of the public are separately considered, we are brought to the terms of the Act with respect to those who are required to obtain certificates of public convenience and necessity and thus to supply the stipulated security. The Act provides that the term auto transportation company, upon which the obligations of the Act are imposed, shall not include " any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and Salt Fish and Oysters and Shrimp from the point of production to the assembling or shipping point enroute to primary market or to motor vehicles used exclusively in transporting or delivering dairy products." The point with respect to this discrimination is not that a distinction is made between common carriers and private carriers, but between private carriers themselves, although they are alike engaged in transporting property for compensation over public highways between fixed termini or over a regular route.

The principle that the State has a broad discretion in classification in the exercise of its power of regulation is constantly recognized by the decisions of this Court. *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157, 161; *Miller* v. *Wilson,* 236 U. S. 373, 382, 384; *Bekins Van Lines* v. *Riley,* 280 U. S. 80, 82; *Silver* v. *Silver,* 280 U. S. 117, 123; *Carley & Hamilton* v. *Snook,* 281 U. S. 66, 73. But the constitutional guaranty of equal protection of the laws is interposed against discriminations that are entirely

arbitrary. In determining what is within the range of discretion and what is arbitrary, regard must be had to the particular subject of the State's action. In the present instance, the regulation as to the giving of a bond or insurance policy to protect the public generally, in order to be sustained, must be deemed to relate to the public safety. This is a matter of grave concern as the highways become increasingly crowded with motor vehicles, and we entertain no doubt of the power of the State to insist upon suitable protection for the public against injuries through the operations on its highways of carriers for hire, whether they are common carriers or private carriers. But in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary and constituted a violation of the appellant's constitutional right. " Such a classification is not based on anything having relation to the purpose for which it is made." *Air-Way Corp.* v. *Day*, 266 U. S. 71, 85; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 563, 564; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400, 417; *Truax* v. *Corrigan*, 257 U. S. 312, 332, 333; *Louisville Gas & Electric Co.* v. *Coleman*, 277 U. S. 32, 37.

For these reasons, we hold that the statute was invalid as applied to the appellant, and it is unnecessary to consider the questions that have been raised with respect to the validity of the provision for the mileage tax, separately considered. The judgment is reversed and the

cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*