IN THE MATTER OF THE WHITE STAR BUS LINE, INC., ETC. JAIME ORTIZ ET AL., Appellants. IN THE MATTER, ETC. JUAN GONZÁLEZ ET AL., Petitioners and Appellants, *v.* PUBLIC SERVICE COMMISSION OF PUERTO RICO ET AL., Respondents and Appellees. WHITE STAR BUS LINE, INC., Intervener.

Nos. 7770 and 19. Argued June 6, 1938.—Decided July 5, 1938.

*Juan Valldejuli* for appellants. *C. Iriarte, F. Fernández Cuyar* and *H. González Blanes* for the White Star Bus Line, Inc., intervener. *T. Torres Pérez* for Public Service Commission, respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

We have before us a motion to dismiss an appeal as frivolous and a petition by the appellants for an injunction in aid of the jurisdiction of this court.

Section 38, as amended, of the Organic Act of Puerto Rico provides:

"That all grants of franchises, rights, privileges, and concessions of a public or quasi public nature shall be made by a public service commission consisting of a public service commissioner, who shall be the president of the said commission, and two associated commissioners, to be appointed by the governor with the advice and consent of the Senate. The Public Service Commissioner shall be appointed for a term of three years and until his successor shall be appointed and shall have qualified, and one of the said associated commissioners, first appointed, shall hold for a term of two years and one shall hold for a term of one year; and thereafter, each of said associate commissioners shall hold for a term of three years and until their successors shall have been appointed and shall have qualified; *Provided,* That the present elective members of the said commission shall continue to be members of said commission until their term of office expires as now provided by law and shall form the commission, to-

gether with the three members appointed by the governor as aforesaid, until the expiration of such period of their services and not thereafter. The salary of the commissioner shall be $6,000 a year and the said commissioner shall devote his entire time to his duties as such commissioner. The compensation of the associated members, both those elected and appointed, shall be $10 for each day's attendance at the sessions of the commission; but in no case shall they receive more than $1,000 during any one year. The said commission is empowered and directed to discharge all the executive functions relating to public service corporations heretofore conferred by law upon the executive council and such additional duties and functions as may be conferred upon said commission by the legislature. Franchises, rights, and privileges granted by the said commission shall not be effective until approved by the governor and shall be reported to Congress, which hereby reserves the power to annul or modify the same.

''The Interstate Commerce Act and the several amendments made or to be made thereto, the Safety Appliance Acts and the several amendments made or to be made thereto, and the Act of Congress entitled 'An Act to amend an Act entitled "An Act to regulate commerce", approved February 4, 1887, and all Acts amendatory thereof, by providing for a valuation of the several classes of property of carriers subject thereto and securing information concerning their stocks, bonds, and other securities,' approved March 1, 1913, shall not apply to Porto Rico.

''The legislative assembly of Porto Rico is hereby authorized to enact laws relating to the regulation of the rates, tariffs, and service of all public carriers in Porto Rico, and the public service commission hereby created shall have power to enforce such laws under appropriate regulation.''

In pursuance of this provision and perhaps independently, the Legislature passed Act No. 70 of 1917 which was subsequently amended, although most of the amendments have no bearing on this case. By virtue of these provisions of law, the Public Service Commission, on January 4, 1938, made the following order:

''It is ordered, furthermore, and it is hereby prohibited that any motor vehicle, not previously authorized by this Commission, act, serve, or operate as a public carrier in the transportation of pas-

sengers offering and rendering its service to the public in general, between the municipalities of San Juan and Río Piedras, or within these municipalities, or between intermediate points. The fact that a motor vehicle act as a public carrier, transporting passengers from one place to another between the municipalities of San Juan and Río Piedras or within the municipality of San Juan or Río Piedras or between intermediate points, shall constitute prima facie evidence of a violation of the provisions of this order.''

Previously to this the Public Service Commission had issued a franchise to the White Star Bus Line and modified the same on March 4, 1932. The appellants in this case, it is clear, never obtained from the Public Service Commission any kind of a certificate or authority and on January 21, 1938, appealed from the recited order to the District Court of San Juan by virtue of the said Act of 1917, section 78.

Section 80 of the Act of 1917, as amended by Act No. 21 of 1935 (Session Laws, p. 180), provides:

''No appeal from any order of the commission shall in any case operate as a supersedeas or the order appealed from, unless the aforesaid proper court shall, by an interlocutory order, make said appeal as a supersedeas, by the filing of a bond and after a hearing to that effect; *And, provided, however,* That in those cases in which the appeal is taken from an order of the Commission establishing, fixing, changing, or altering prices, rates, or charges of any public service, the appeal shall not arrest the effects of the order of the Public Service Commission by operating as a supersedeas unless the public-service company affected shows cause before the court, upon the corresponding hearing with the appearance of the Commission, that the order of the Commission is confiscatory and that its effects would deprive such public-service company of its property without due process of law; and if these facts are established before said court, the court may grant an order based upon conclusions of fact and of law suspending the effects of the order of the Commission; but it shall previously require the public-service company to file a bond in favor of The People of Puerto Rico, for the benefit of all parties prejudiced by the failure of such company to comply with the order appealed from during the period of such supersedeas, and in such sum and under such conditions as the court may direct; such bond shall be conditioned for the repayment to all parties aggrieved

by the supersedeas of the order of the Commission, of any sum the public-service company may have collected during the period of the suspension in excess of what the Public Service Commission may have ordered, in case such order of the Commission is finally affirmed; *And, provided, further,* That for the purposes of this supersedeas, the evidence submitted for the consideration of the court shall be that which appears from the record as introduced and submitted for the consideration of the Public Service Commission; and no other evidence which has not been previously submitted to the said Commission shall be admitted.''

In accordance with this latter section, after a petition and a hearing, the District Court of San Juan, through Mr. Justice Llauger, issued an order suspending the one issued by the Public Service Commission and fixed the bond in favor of the People of Puerto Rico in $3,000. It is well to say that the persons who took the appeal from the Public Service Commission were only three. Necessarily, however, anything done for them results in favor of people who are operating as the appellants are, namely, hiring out their vehicles by seats to any persons who would pay the fare of five cents charged by them.

The appeal on its merits came on to be heard by Mr. Justice Romany, who in an elaborate and carefully considered opinion sustained the order of the commission. On appeal the appellants have filed a petition that this court should issue an order in aid of its jurisdiction, alleging that various carriers of the same nature as the appellants' were being complained of and prosecuted in the courts of Puerto Rico. The intervener, the White Star Bus Line, filed a motion to dismiss the appeal as frivolous and, consistently therewith, opposed the granting of the injunction in aid of the jurisdiction of this court.

One of the first points of the intervener is that the order of the Public Service Commission, in its essence, only requires vehicles like the ones used by appellants, or rather their owners, to obtain a certificate or authority from the Public Service Commission. It is true, as the intervener

says, that the appellants not only did not obtain a certificate from the Public Service Commission, but in no part of the proceedings alleged or attempted to show that said certificate or authority could not be obtained. We think the intervener is mistaken. The primary purpose of this order was to prevent persons like the appellants from using the streets between here and Río Piedras while plying their trade. It is an important fact that the White Star Bus Line appears in the case and in essence is defending its franchise, fortified by other orders of the Public Service Commission. We could take public notice or almost public notice that the Public Service Commission will not grant a right to the appellants except perhaps under conditions that the appellants or others could not fulfill. The principle announced by Chief Justice Marshall comes into play, namely, that it is not what has actually been done under an order or a situation, perhaps, but what may be done. We do not, however, regard the purpose of the order of the commission as playing a very large role in the disposition of this case.

■ Under section 2 of the Public Service Act (Act No. 70 of 1917, *supra*), there is the definition of public-service companies, as follows:

"Section 2.—For the purposes of this Act public-service companies shall be such natural persons or bodies corporate as may engage in Porto Rico in any of the following pursuits or businesses:

"(*a*) Transportation of persons or freight using in whole or in part marine, fluvial or land routes.

"*     *     *     *     *     *     *

"(*h*) Such others as may engage in business or pursuits similar to those hereinabove mentioned; *Provided*, however, That such companies shall not be subject to the provisions of this Act, with respect to any business transacted or any property owned by them outside of Puerto Rico; nor shall the provisions of this Act be so construed as to extend to any matter or thing in regard to which Congress has regulated to the exclusion of the power of Porto Rico; *And provided, further,* That none of the provisions of this Act shall apply to the generation, transmission, or distribution of electricity; to the

manufacture or distribution of gas; to the furnishing or distribution of water; or to the production, delivery, or furnishing of steam, or any other substance for heat or power, by a producer, who is not otherwise a public-service company, for the sole use of such producer, or for the use of tenants of such producer, and not for the sale to others.''

And further along in the same section we find the following words used:

'''The term 'common carrier', as used in this Act, includes any natural person or body corporate engaged for profit in the conveyance of passengers or property, or both, in Puerto Rico, by any means of locomotion.''

Section 95 of said act provides as follows:

''If any public-service company shall violate any of the provisions of this Act, or shall perform any act herein prohibited; or shall fail, omit, neglect or refuse to perform any duty enjoined upon it by this Act; or shall fail, omit neglect or refuse to obey, observe and comply with any final direction, requirement, determination or order made by the commission; or to comply with any final judgment, order or decree made by any court, such public-service company, for such violation, omission, failure, neglect or refusal, shall forfeit and pay to the Treasurer of Porto Rico a sum not less than fifty (50) dollars or more than one thousand (1,000) dollars, to be recovered by an action instituted in the name of The People of Porto Rico in the District Court of San Juan, Section 1, which court is hereby clothed with exclusive jurisdiction to hear and determine all such actions, and to determine the amount of the fine.

''In construing and enforcing the provisions of this section the violation, omission, failure, neglect or refusal of any officer, agent or other person acting for or employed by any such public-service company, acting within the scope of his employment, shall in every case be deemed to be the violation, omission, neglect or refusal of such public service company.''

The above section, as amended in 1927 (Act No. 2, Session Laws, p. 406), granted jurisdiction to any competent court, including the municipal courts.

Therefore, if the Public Service Act is to be taken at its per value, the Public Service Commission had a full right

to regulate the traffic and forbid the owners of motor vehicles from hiring seats at five cents absolutely or without obtaining a certificate or authority from the Public Service Commission.

■ We cannot agree with the appellants that the Public Service Commission is creating a crime. What it is doing *prima facie* is exercising an authority to regulate traffic by persons like the appellants and others engaged in the same business, in this case, within the municipalities of San Juan and Río Piedras and intermediate points. The cases are clear that the orders of Public Service Commissions and other administrative bodies can be given force by a general penal provision like that embraced in section 95, *supra*. We agree with the court below substantially that the fact that the order of the Public Service Commission fixes the rule of evidence is not important for the present discussion. Whether or not the Public Service Commission had a right to promulgate this so-called rule of evidence can be raised in any prosecution and be disregarded or annulled without interfering with the other administrative provisions. We differ from the appellants in that the Public Service Act did not apply to their case. Section 2 in its various provisions covers the case. These considerations would dispose of the appeal which then could be considered frivolous were it not for the fact that there is another doubt suggested by the appellants.

■ It is this, that section 38 of the Organic Act, *supra*, would seem to apply exclusively to public carriers or common carriers. Throughout this part of the Organic Act it is evident that Congress had in mind companies or probably persons who were such public carriers. Of course, the framers of the Organic Act of 1917 may not have had in mind the smaller automobiles with seats for a very limited number of passengers. Nevertheless, the general tendency of the Organic Act, we think, is limited to public service corporations.

Then the question arises whether the Legislature of Puerto Rico could, by an attempted definition, make the appellants

public-service companies, if by the well-understood customs and practices of motor vehicles carrying passengers they were not so.

Among others, we have before us the decision of the Supreme Court of the United States in the case of *Smith* v. *Cahoon*, 283 U. S. 553. In that case Smith was arrested upon a warrant charging him with operating vehicles upon the highways in Duval County, Florida, without having obtained the certificate of public convenience and necessity, and without having paid the tax, required by chapter 13,700, Laws of Florida, 1929.

The statute upon which the appellant was arrested was applicable by its terms to all who should operate motor vehicles in the business of transporting persons or property "for compensation or as a common carrier." It prohibited such persons from so operating without having first obtained from the State Railroad Commission a certificate of public convenience and necessity. The conditions for obtaining such certificate included (a) a schedule of tariffs, (b) the giving of a bond or insurance policy for the protection of the public against injury resulting from negligence in the operation of the vehicles and for the protection of the passengers and property carried. The commission was empowered to regulate the "service and safety of operations"; to fix or approve the rates, fares, charges, classification, rules, and regulations for each transportation company; to prescribe a uniform system and classification of accounts; and to require the filing of annual and other reports.

The appellant was employed under an exclusive contract with the Atlantic & Pacific Tea Company in hauling its merchandise from Jacksonville to various places in Florida. He had never held himself out as a public carrier. The statute was attacked as violating the due process and equal protection clauses of the Fourteenth Amendment of the Constitution.

The Supreme Court of the United States in the opinion delivered by Mr. Chief Justice Hughes held:

1. That inasmuch as the statute affixed the same conditions to all who should apply for certificates of public convenience and necessity under its terms, and since those conditions embraced a scheme of supervision and control which constitutionally could be applied only to common carriers, a private carrier for hire could not constitutionally be arrested for failing to procure a certificate and pay the required tax.

Said the Court:

"All carriers within the Act, whether public or private, are put by the terms of the statute upon precisely the same footing. All must obtain certificates of public convenience and necessity upon like application and conditions. It is true that the statute does not in express terms demand that a private carrier shall constitute itself a common carrier, but the statute purports to subject all the carriers which are within the terms of its definition to the same obligations. Such a scheme of regulation of the business of a private carrier, such as the appellant, is manifestly beyond the power of the State. (Citations.)"

2. That the statute could not be regarded as intending to afford one constitutional scheme for common carriers and another for private carriers, because it would then be subject to the constitutional objection of lack of appropriate certainty. See page 565.

3. Since the statute expressly excluded from its application "any transportation company engaged solely in the transporting of agricultural, horticultural, dairy, or other farm products and fresh and salt fish and oysters and shrimps from the point of production to the assembling or shipping point, and also exempted motor vehicles used exclusively in transporting or delivering dairy products," it was repugnant to the equal protection clause of the Fourteenth Amendment.

It may be questioned, therefore, as it has been stated in other cases, see 51 A.L.R. 825, whether the Legislature could make the aforesaid definition.

380

We hold no very definite views on the subject and the case of *Smith* v. *Cahoon, supra,* may be distinguished, but under the circumstances we can not hold that the appeal is frivolous and therefore the motion to dismiss should be over-ruled.

■ Section 78 of the Act of 1917 shows how and when a supersedeas. may be issued. To our minds it makes no difference whether the so-called supersedeas is essentially an injunction or not. The point is that, however it may be characterized, the judge of the District Court of San Juan was authorized to issue it in his discretion *pendente lite;* and this he did.

Whether the idea of the Legislature was to protect an appellant from any order of the Public Service Commission until the final decision of this court is a debatable question.

Therefore, the effect of the order of the Public Service Commission of January 4th, 1938 should be suspended until further order from this court, provided the petitioners give a bond in the sum of $3,000 to answer for the damages that may be caused to any of the parties affected, by the suspension of said order. The case on its merits will be set for July 11, 1938.