SUMMERS, Justice
(dissenting).
The ordinance in question provides:
The license tax of a business for the calendar year following that of commencement shall be based on the gross receipts, gross sales, gross premiums, gross fees or gross commissions earned, regardless of whether received or accrued, during the previous year, divided by the number of days in operation during the year of commencement, and multiplied by three hundred sixty-five (365). (Jefferson Parish Code, Sec. 10-6(a)(4).).
The ordinance corresponds verbatim with Section 398, subd. A (4) of Title 47 of the Revised Statutes.
Prior to the enactment of Section 398, subd. A (4) the Attorney General rendered an opinion setting forth what he considered to be an acceptable standard for determining an occupational license based on gross sales for the first full year of operation. The opinion set forth:
It is our opinion that the gross receipts of the previous year should be used as a standard for estimating the license for the present year; and, when a business has been operating for less than a year, the standard for estimating the license due for the present year .is six times the gross receipts for the first two months of business, whether those two months are in the previous year or the present year for which license is collected. (Op. Atty. Gen. 1936-38, p. 1140)
The standard thus established was enacted into law by the State and the parish of Jefferson. Obviously the method of computation adopted by this legislation was intended to give the taxpayer a break. By this standard, a beginning business, which ordinarily has its lowest gross receipts in the first few months, is given the advantage of having its occupational license tax computed on gross income arrived at by multiplying the first two low income months by six, to arrive at a twelve month base for computing the tax.
Sharlo Corporation, however, is not the average taxpayer whose gross sales one would expect to increase on a gradually ascending scale each month. To the contrary, its business is markedly seasonal. Sixty percent of its annual gross sales occur in the period from October 1 through December 31 of each year. By using the statutory standard, as was done here, Shar-lo’s 1970 occupational license tax will be based on its sales from October through *249 December 1969. Thus, rather than a tax based on estimated gross sales for a twelvemonth period, a period upon which the tax should be based, a tax equivalent to 240 percent of actual gross sales for the year 1970 will he imposed. Actually Sharlo paid an occupational license of $1,800 for 1971 based on gross sales for 1970; whereas, the 1970 tax based upon the three-month period October through December 1969 is $3,600. In effect, therefore, Sharlo was penalized because it began its business during the seasonal high.
It is upon these facts that the taxpayer asserts the unconstitutionality of the statute, contending that it denies equal protection of the law as applied in this case.
A classification in the adoption of a state or parochial statute is violative of equal protection if that classification is without a reasonable basis and is purely arbitrary. Sharlo’s dilemma, however, is not the result of a classification strictly speaking. The predicament, of this taxpayer results from the failure of the ordinance to properly and separately classify taxpayers having seasonal businesses in order that they may not suffer the discriminatory and unequal, in fact punative, taxation to which Sharlo is subjected here. The objection to the ordinance is that it includes Sharlo within its terms in the method of computing the tax when a special method should be prescribed for seasonal businesses.
The statute on its face makes no distinction between seasonal businesses whose first two months of business are entirely disproportionate to the remainder of the annual period, and businesses whose activity is more evenly distributed throughout the annual period which forms the basis for computing the occupational license tax.
No separate scheme of computation can be discerned in the terms of the Act with respect to those seasonal businesses which are begun during the peak of their seasonal operations and other businesses not likewise situated. All businesses affected by the Act, whether seasonal or not, are put upon precisely the same footing.
The principle that the State has a broad discretion in classification in the exercise of its power of regulation is constantly recognized by the decisions. Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264 (1931); Carley & Hamilton v. Snook, 281 U.S. 66, 50 S.Ct. 204, 74 L.Ed. 704 (1930); Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929); Bekins Van Lines v. Riley, 280 U.S. 80, 50 S.Ct. 64, 74 L.Ed. 178 (1929); Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915); Central Lumber Co. v. South Dakota, 226 U.S. 157, 33 S.Ct. 66, 57 L.Ed. 164 (1912). But the constitutional guaranty of equal protection of the laws is interposed against discriminations that are entirely arbitrary. In determining what is within the range of discretion and what is arbitrary, regard must be had to the particular subject of the governmental action. Smith v. Cahoon, supra.
In the present instance the subject is a computation of the basis for an occupational license tax. I have no doubt of the authority to impose such a tax. But in imposing such a tax there does not appear to be the slightest justification for assessing a seasonal business — as in this case — an entirely disproportionate amount than is imposed on other similar businesses which are not seasonal.
In my view the computation of the tax as it affects Sharlo was wholly arbitrary and discriminatory. Equal protection under the Fourteenth Amendment requires that legislation affect all persons and interests similarly situated in an even-handed manner. Differently situated taxpayers, however, should not be equally treated. It is offensive to the Equal Protection Clause of the Fourteenth Amendment to impose equal taxation upon parties differently situated, when it leads to unequal and arbitrary discrimination and serves no legitimate state interest. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).
*250 Though a law itself be fair on its face, yet, if it is applied and administered by public authority with an unequal hand so as practically to result in unjust and arbitrary discrimination, it denies equal justice under the Constitution of the United States and the State of Louisiana. Simmons v. City of Shreveport, 221 La. 902, 60 So.2d 867 (1952). U.S.Const. Amend. XIV; La. Const. art. 1, § 2.
I respectfully dissent.