Filed 3/12/25  P. v. Seals CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>ARTHUR JEROME SEALS,<br><br>   Defendant and Appellant. | H050927<br>(Santa Clara County<br> Super. Ct. No. C2004028) |

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  (U.S. Const., 2d Amend.)  The United States Supreme Court has interpreted the amendment to confer "an individual right to keep and bear arms."  (*District of Columbia v. Heller* (2008) 554 U.S. 570, 595.)  In June 2022, *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*) decided that this right should be applied using a methodology "centered on constitutional text and history" (*id*. at p. 22), and the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  (*Id*. at p. 24; see also *United States v. Rahimi* (2024) 602 U.S. 680, 692.)

Defendant Arthur Jerome Seals was charged with publicly carrying a loaded firearm in violation of Penal Code section 25850.[1]  As a general matter, this section prohibits individuals from "carrying a loaded firearm . . . on the person or in a vehicle while in any public place or on any public street."  (§ 25850, subd. (a).)  While the prohibition is unrestricted on its face, it is subject to exemptions in other statutory provisions (§§ 26000-26060), including one for individuals licensed to carry concealed weapons.  (§ 26010 [exempting individuals authorized to carry handguns under section 26150 et seq.].)  At trial, which concluded one month after *Bruen*, Seals did not dispute that he violated section 25850 by publicly carrying a loaded firearm without a license.  However, when he was sentenced in March 2023, approximately nine months after *Bruen*, Seals informed the trial court that on appeal he planned to challenge his conviction under *Bruen*.

Seals now contends that section 25850 is unconstitutional under *Bruen*.  For the reasons explained below, we reject Seals's constitutional challenge to his conviction.

Seals also argues that the trial court imposed an unlawful sentence.  In particular, he asserts that the trial court improperly sentenced him to two years in state prison even though the applicable statute authorizes only imprisonment in county jail.  The Attorney General concedes this error, and we accept that concession.  We further decide we may correct the legal error without remand and modify the judgment accordingly.  As modified, we affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND

On February 7, 2020, Seals went to a night club with Corey Page.  After the night club closed, Page, Seals, and two other individuals got into a car, circled the parking lot, and stopped near a group of other individuals.  Surveillance cameras in the vicinity recorded what happened next.  A man, Chanda El, approached Page while holding a gun

---

[1] All further unspecified statutory references are to the Penal Code.

at his side. Another man, Fernando Fernandez, took Page aside and spoke briefly with him. Afterwards, Fernandez walked away with El, a gun discernible in Fernandez's hand, and Page went to Seals, who gave him a gun. Fernandez then walked away from the group opposite Page, but Page circled around and shot Fernandez five times, killing him.

Page and Seals were charged with murder and attempted murder. In addition, Seals was charged with carrying a loaded firearm not registered to him in violation of section 25850, subdivisions (a) and (c)(6). After trial, the jury acquitted Page and Seals of both murder and attempted murder. However, the jury found Page guilty of the lesser included offense of voluntary manslaughter. The jury found Seals—who, as noted above, did not contest the charge—guilty of carrying a loaded firearm not registered to him.

The trial court conducted a sentencing hearing on March 17, 2023. The probation report prepared for Seals's sentencing noted that Seals was eligible for probation. Under current law and based on Seals's history of criminal activity, the report recommended that Seals be "committed to the California Department of Corrections and Rehabilitation" for two years.

At the sentencing hearing, Seals argued that he should be placed on probation rather than sentenced to prison. The prosecutor contended that "a prison sentence is appropriate." Neither party suggested that the trial court lacked statutory authority to sentence Seals to state prison.

The trial court rejected Seals's contention that he should be placed on probation. The court found "a prison sentence is definitely warranted in this case, given the serious nature of the case and what ultimately happened [] with that gun that Mr. Seals brought to the scene." In articulating Seals's commitment term, the court stated "Probation is denied. The defendant is committed to the California Department of Correction[s] and Rehabilitation for two years. And that is the middle term on [c]ount 3. The defendant has credits of 881 actual, plus 800 pursuant to [section] 4019, for a total of 1,761 days

3

credit for time served." Based on his custody credits, the court deemed Seals's sentence served and ordered him to report to parole.

At sentencing, Seals's counsel informed the trial court that Seals planned to challenge his conviction based on the United States Supreme Court's decision in *Bruen* and commented that "the law is so unsettled in this area." Seals's counsel said he believed the issue is "best handled on the appellate level" and the defense was "prepared to go ahead" with sentencing. Counsel did not explain to the trial court why *Bruen* bars Seals's conviction.

Seals subsequently filed a timely notice of appeal.

## II. DISCUSSION

A. *Conviction Under Section 25850*

Seals challenges his conviction on the ground that section 25850 is unconstitutional because it violates the Second Amendment right to bear arms, both on its face and as applied to him. The Attorney General responds that Seals lacks standing to challenge section 25850's constitutionality, Seals forfeited any as applied challenge, and, in any event, the statute is constitutional and Seals's claims lack merit. As explained below, we conclude that Seals has standing to raise a facial challenge to the constitutionality of section 25850, but that challenge fails.

1. Standing

The Attorney General argues that Seals lacks standing to challenge the constitutionality of section 25850 because he did not seek a concealed carry license. We agree in part.

Seals plainly has been injured and thus has a concrete interest in the constitutionality of section 25850 because he was convicted of violating the section and sentenced for that violation. It is well-established that a party has standing to challenge the constitutionality of a statute "where a statute is invalid upon its face and an attempt is made to enforce its penalties in violation of constitutional right." (*Smith v. Cahoon*

4

(1931) 283 U.S. 553, 562 (*Smith*).) Consequently, decisions from both this and other appellate districts have held that defendants convicted of violating section 25850 have standing to bring facial challenges to the section's constitutionality under the Second Amendment even though they did not seek concealed carry licenses. (*In re T.F.-G.* (2023) 94 Cal.App.5th 893, 913–914 (*T.F.-G.*); *In re D.L.* (2023) 93 Cal.App.5th 144, 158 (*D.L.*); *People v. Bey* (2025) 108 Cal.App.5th 144, 164 (*Bey*).) We likewise conclude that Seals has standing to bring a facial challenge to section 25850.

However, Seals lacks standing to bring his as applied challenge. Seals argues that application of section 25850 is unconstitutional because he has no felony convictions and because his misdemeanor convictions are non-violent and do not justify stripping him of his Second Amendment right to bear arms. We interpret this argument as challenging requirements for obtaining a concealed carry license under section 26150 or 26155, which exempts individuals from section 25850's prohibition against publicly carrying loaded firearms. (§ 26010 ["Section 25850 does not apply to the carrying of any handgun by any person as authorized pursuant to Chapter 4 (commencing with [s]ection 26150) of [d]ivision 5."].) Only individuals who sought a license may bring an as applied challenge to the constitutionality of a licensing requirement. (*United States v. Decastro* (2d Cir. 2012) 682 F.3d 160, 164; see also *Smith*, *supra*, 283 U.S. at p. 562 ["[W]hen a statute, valid upon its face, requires the issue of a license or certificate as a condition precedent to carrying on a business or following a vocation, one who is within the terms of the statute, but has failed to make the required application, is not at liberty to complain because of his anticipation of improper or invalid action in administration."].) Because Seals does not assert that he applied for a concealed carry license, he lacks standing to challenge application of the requirements for such a license to him.[2]

---

[2] Even assuming arguendo that Seals has standing to bring an as applied challenge, Seals forfeited that challenge on appeal by not raising it in the trial court. (See *People v. Anderson* (2024) 104 Cal.App.5th 577, 584, fn. 1; *Zachary H. v. Teri A.* (2023) 96

2. <u>Merits</u>

Seals's failure to challenge the constitutionality of section 25850 in the trial court does not bar him from bringing a facial challenge on appeal because facial challenges raise pure questions of law that do not require factual development. (See, e.g., *Sheena K.*, *supra*, 40 Cal.4th at p. 887; *T.F.-G.*, *supra*, 94 Cal.App.5th at p. 908, fn. 11; *D.L.*, *supra*, 93 Cal.App.5th at p. 156.)

"Section 25850, subdivision (a) generally provides that '[a] person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place.' The provision is one component of California's ' "multifaceted statutory scheme regulating firearms," ' which also prohibits under section 25400, ' "carrying concealed firearms in public, whether loaded or unloaded," ' and, under section 26350, ' "carrying unloaded handguns openly on the person in a public place or on a public street." ' " (*Bey*, *supra*, 108 Cal.App.5th at p. 162.)

"This statutory scheme, however, does not impose a complete prohibition on carrying a firearm in public. Instead, 'section 25850 is in effect the enforcement mechanism of a regulatory regime that grants licenses to those who may lawfully carry firearms and withholds licenses from those who may not.' [Citation.] The limitations set by sections 25850 and 25400 do not apply to an individual who is licensed to carry a concealed firearm (§§ 25655, 26010), one of 'numerous exceptions' to the general prohibitory scheme." (*Bey*, *supra*, 108 Cal.App.5th at pp. 162–163.)

"California's concealed carry licensing regime is governed by sections 26150 through 26235. During times relevant to this case, an application for a concealed carry license required proof of 'good cause' for issuance of the license, and licensing authorities retained discretion on whether to issue a license. [Citations.] Effective

Cal.App.5th 1136, 1144; see also *People v. Patton* (2019) 41 Cal.App.5th 934, 946; *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).)

6

January 1, 2024, the Legislature amended sections 26150 and 26155 by providing that licensing authorities 'shall issue' (instead of 'may issue') licenses, and by eliminating the 'good cause' requirement, among other changes." (*Bey*, *supra*, 108 Cal.App.5th at p. 163.)

" 'The interpretation of a statute and the determination of its constitutionality are questions of law. In such cases, appellate courts apply a de novo standard of review.' " (*People v. Alexander* (2023) 91 Cal.App.5th 469, 474 (*Alexander*).)

" ' "A defendant challenging the constitutionality of a statute carries a heavy burden: 'The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.' " ' [Citations.] Typically, a litigant may challenge the constitutionality of a statute in two ways: on its face or as applied." (*D.L.*, *supra*, 93 Cal.App.5th at p. 156.)

"A facial challenge seeks to void the statute as a whole by showing that ' "no set of circumstances exists under which the [statute] would be valid," i.e., that the law is unconstitutional in all' " (*D.L.*, *supra*, 93 Cal.App.5th at p. 157; see also *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [" ' "[P]etitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions[]" ' "]) or at least the " ' "great majority of cases" ' " (*T.F.-G.*, *supra*, 94 Cal.App.5th at p. 909, italics omitted). When reviewing a facial challenge to a statute, we "consider[] only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe*, at p. 1084; see also *D.L.*, at pp. 157–158 [describing the differences between facial and as applied challenges].)

" 'Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact' " because an unconstitutional provision in a statute " 'does not necessarily defeat or affect the validity of its remaining provisions.' " (*Free Enterprise Fund v. Public Company Accounting Oversight Bd.* (2010) 561 U.S. 477, 508.) If only a

portion of the statute is unconstitutional, and that portion is severable, courts will uphold the statute as constitutional. (*People v. Mosqueda* (2023) 97 Cal.App.5th 399, 414 (*Mosqueda*); see also *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 270–271 [explaining the severability analysis].)

Seals contends that section 25850 is unconstitutional because the licensing provision underlying it formerly contained a "good [] cause" requirement which Seals contends is unconstitutional under *Bruen* and inseverable. While, as the Attorney General concedes, *Bruen* renders the "good cause" requirement unconstitutional, decisions from this and other districts have held the "good cause" requirement severable. (*Mosqueda*, *supra*, 97 Cal.App.5th at pp. 408–410 [concluding that the "good cause" requirement is grammatically, functionally, and volitionally severable]; *T.F.-G.*, *supra*, 94 Cal.App.5th at p. 916 ["the 'good cause' licensing requirement is severable from the balance of California's licensing requirements"]; *D.L.*, *supra*, 93 Cal.App.5th at p. 163 [the " '[g]ood cause' " requirement "satisfies the criteria for severability"]; *Bey*, *supra*, 108 Cal.App.5th at p. 166 ["agree[ing] with the *D.L.* court's conclusion that, given the severability of the former 'good cause' provisions, facial invalidation of California's concealed carry licensing scheme is unwarranted."].)

Seals further contends that California's licensing statute formerly gave too much discretion to licensing authorities by requiring license applicants to demonstrate "good moral character." (§ 26150, former subd. (a)(1), as enacted Stats. 2015, ch. 785, § 2; § 26155, former subd. (a)(1), as enacted by Stats. 2010, ch. 711, § 6.) However, *Bruen* approvingly cited several state licensing statutes containing analogous "suitability" requirements (*Bruen*, *supra*, 597 U.S. at p. 13, fn. 1 [discussing Connecticut, Delaware, and Rhode Island statutes]), and Seals makes no attempt either to define "good moral character" or distinguish California's "good moral character" requirement from these suitability requirements. Seals also fails to address the issue of severability even though

at least one prior decision has held the former "good moral character" requirement severable. (*Mosqueda*, *supra*, 97 Cal.App.5th at p. 411.)

Seals broadly and perfunctorily claims that "prohibiting carrying loaded firearms without a license infringes on conduct protected by the Constitution and is not consistent with the tradition of firearms regulation." That argument is unavailing. The United States Supreme Court has "recognized that 'the Second Amendment is [not] a regulatory straightjacket' [citation] and stressed that 'nothing in [its] analysis should be interpreted to suggest the unconstitutionality of . . . licensing regimes' that 'require applicants to undergo a background check or pass a firearms safety course' because these 'are designed to ensure only that those bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens." ' " (*Bey*, *supra*, 108 Cal.App.5th at p. 160 [quoting *Bruen*]; see also *Bruen*, *supra*, 597 U.S. at p. 79 (conc. opn. of Kavanaugh, J.) ["[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense."]; *D.L.*, *supra*, 93 Cal.App.5th at p. 165.) "If a state may enforce a licensing regime, then a state may impose penalties for noncompliance." (*T.F.-G.*, *supra*, 94 Cal.App.5th at p. 915; see also *Mosqueda*, *supra*, 97 Cal.App.5th at p. 414 [noting that a defendant's "Second Amendment rights are not violated when the state enforces [its licensing requirements] criminally"].) Section 25850 is one such enforcement mechanism and does not operate as an absolute ban on carrying a loaded firearm. (See *T.F.-G.*, at p. 915; *D.L.*, at pp. 166–167.)

Moreover, the penalties section 25850 imposes on those who do not have a concealed carry license would apply not only to those "who are wrongfully denied licenses based on the unconstitutional good cause requirement, but [also] on individuals who cannot or do not obtain licenses due to constitutionally valid restrictions" set forth in sections 26150 and 26155, including the firearms training requirement. (*T.F.-G.*, *supra*, 94 Cal.App.5th at p. 916; see §§ 26150, subd. (a)(4), 26155, subd. (a)(4).) A facial challenge to section 25850 "succeeds only where [the] statute is unconstitutional in all or

9

at least the generality or great majority of cases." (*T.F.-G.*, at pp. 915–916.) "[I]t is not enough to show that [the] statute may have an unconstitutional application to a hypothetical person lawfully carrying" a loaded firearm on their person and/or in their vehicle "after failing to secure a license [to do so] due to [the] 'good cause' requirement." (*Id.* at p. 915; see also *Alexander*, *supra*, 91 Cal.App.5th at p. 474 [noting that, when "analyzing a facial challenge to the constitutionality of a statute," the reviewing court does not consider " 'its application to the particular circumstances of an individual' "].) Seals fails to demonstrate that section 25850 could not still have been constitutionally applied to applicants who failed to secure a license due to other valid licensing requirements.

For these reasons, we reject Seals's facial challenge to section 25850 under the Second Amendment.

B. *Sentence*

Seals argues that he was unlawfully sentenced to two years of imprisonment in state prison. The Attorney General concedes that the trial court lacked authority to impose a prison sentence on Seals and should instead have ordered any custodial time be served in county jail. We accept that concession.

The jury found Seals guilty of carrying a loaded firearm for which he was not the registered owner (§ 25850, subds. (a), (c)(6)). That offense is punishable "by imprisonment pursuant to subdivision (h) of [s]ection 1170 or by imprisonment *in a county jail* not to exceed one year" (§ 25850, subd. (c)(6), italics added). Section 1170, subdivision (h)(1), in turn, provides for punishment "by a term of imprisonment *in a county jail* for 16 months, or two to three years."[3] (Italics added.) Consequently, the trial

_____

[3] There are exceptions, tied to a defendant's criminal history or other crimes of conviction, to section 1170, subdivision (h)(1)'s directive that imprisonment be served in a county jail, but they do not apply to Seals. (See § 1170, subd. (h)(3).)

court erred in committing Seals to state prison rather than to county jail. The trial court also erred in placing Seals on parole. (See § 3000, subd. (a)(1).)

Seals requests that the judgment be reversed and this case be remanded so that the trial court properly may exercise its discretion in resentencing him. Seals does not identify the discretionary choice he believes the trial court would exercise on remand. The Attorney General urges this court to correct the judgment, without a remand to the trial court, to reflect that Seals's sentence was to be served in county jail rather than state prison.

We are not persuaded that a remand for resentencing is necessary under the circumstances of this case. The trial court considered and exercised its discretion whether to place Seals on probation. When the trial court rejected that course of action, its only option was to sentence Seals to a term of imprisonment to be served in county jail pursuant to section 1170, subdivision (h)(1). The court elected a two-year term, and Seals does not challenge the court's decision on the term imposed. (In any event, by the time of his sentencing, Seals had accumulated enough custody credits to fulfill even the maximum term of three years.)

Remanding for resentencing now would serve no purpose. Because there is no factual dispute at issue, and because whether Seals could serve his term of imprisonment in state prison or in county jail is a pure question of law (and hypothetical, given any imprisonment term was deemed served due to his custody credits), we may correct it on appeal. (See *People v. Smith* (2001) 24 Cal.4th 849, 853.) We therefore modify Seals's judgment to reflect that his sentence of two years should have been deemed served in county jail and that he should not have been ordered to serve a parole term. We do not modify any other aspect of Seals's sentence, including the award of custody credits.

### III. DISPOSITION

The judgment is modified to reflect that Seals's sentence of two years is deemed served in county jail under Penal Code section 1170, subdivision (h)(1), with no period of

11

parole or mandatory supervision.  There is no change to Seals's custody credits.  The trial court is ordered to prepare an amended minute order and a felony abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.


_____
                    Danner, J.




I CONCUR:




_____
Greenwood, P. J.




**H050927**
*People v. Seals*

Bromberg, J., concurring

I respectfully concur in the judgment. I agree with the majority that the trial court erred in sentencing Seals to imprisonment in state prison rather than county jail. However, for largely the reasons articulated in my concurrence in *In re T.F.-G.* (2023) 94 Cal.App.5th 893 (*T.F.-G.*), I would not reach Seals's Second Amendment challenge.

Seals did not argue in the trial court that the state's firearms licensing requirements violate the Second Amendment. As the majority recognizes, Seals's trial concluded one month after the Supreme Court's decision concerning the Second Amendment in *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*). Nevertheless, Seals did not challenge the constitutionality of the state's firearms licensing requirements either at trial or in post-trial motions. Instead, he waited until sentencing to invoke *Bruen*, and, even then, Seals merely said that he was "going to file an appeal based upon the issue surrounding the U.S. Supreme Court decision in *Bruen*."

As the majority points out, when a facial challenge to the constitutionality of a statute is raised for the first time on appeal, we have discretion to consider it because such challenges raise pure questions of law. (See, e.g., *In re Sheena K* (2007) 40 Cal.4th 875, 887; *T.F.-G. supra*, 94 Cal.App.5th at p. 908, fn. 11.) The Second Amendment, however, raises unusual questions of law. Under the Supreme Court's developing Second Amendment jurisprudence, to establish the validity of a restriction on carrying firearms, the government must show that the restriction is "consistent with the Nation's historical tradition of firearm regulation." (*Bruen*, *supra*, 597 U.S. at pp. 22-24, 38-39; *District of Columbia v. Heller* (2008) 554 U.S. 570, 592-595.) And in assessing that tradition, the Supreme Court has analyzed difficult-to-obtain historical materials such as state statutes and judicial opinions from the colonial, early republic, and antebellum eras. (*Bruen*, *supra*, 597 U.S. at pp 38-60.) Consequently, at least when starting from scratch, the Second Amendment requires an unusually research-intensive inquiry. Moreover, far

from relying on existing precedent, Seals asks us to depart from prior decisions and evaluate the relevant historical tradition anew.

In my view, it is imprudent to embark on this endeavor for the first time on appeal, without the benefit of initial development of the relevant historical analysis at the trial court level and the views of the trial court.  It is also unfair to require the government to engage in the relevant historical analysis for the first time on appeal, subject to the formal and practical constraints on appellate briefing.  Consequently, I would not entertain Second Amendment arguments that ask the court to evaluate anew the historical tradition of firearms regulations when raised for the first time on appeal.

I therefore concur in the majority's decision to affirm the judgment.


BROMBERG, J.


*People v. Seals*
H050927