### KINGSLEY INTERNATIONAL PICTURES CORPORATION, Plaintiff,

v.

The CITY OF PROVIDENCE, RHODE ISLAND, Walter H. Reynolds, Mayor of the City of Providence, John B. Dunn, Commissioner of Public Safety of the City of Providence, John A. Murphy, Chief of Police of the City of Providence, George Blessing, Police Lieutenant and Amusement Inspector of the City of Providence, and Joseph C. Scuncio, Chairman and Secretary and Benjamin M. McLyman and John W. Moakler, members of the Bureau of Licenses of the City of Providence, Defendants.

Civ. A. No. 2292.

United States District Court
D. Rhode Island.

July 1, 1958.

Dissenting Opinion July 14, 1958.

Magruder, Circuit Judge, dissented.

Arthur J. Levy, Providence, R. I., and Ephraim London, Levy, Carroll & Jacobs, New York City, N. Y., for plaintiff.

William E. McCabe, City Solicitor, and Harry Goldstein, Asst. City Solicitor of the City of Providence, Francis D. McManus, Providence, R. I., for defendants.

Before MAGRUDER and HARTIGAN, Circuit Judges, and DAY, District Judge.

HARTIGAN, Circuit Judge.

The plaintiff in its amended complaint alleges six causes of action against the City of Providence and certain officials thereof. The complaint concerns the exhibition in the City of Providence of the motion pictures entitled "And God Created Woman" and "Lady Chatterley's Lover". This case is before us as a district court of three judges under 28 U.S.C. § 2281 following the plaintiff's application for an interlocutory injunction based on the first three causes of its complaint which concerned "And God Created Woman" [1] and the defendants' motion to dismiss the entire complaint. No answer was filed by the defendants, and the only evidence before us was presented by the plaintiff in support of its application for an interlocutory injunction.

The plaintiff is a New York corporation owning the exhibition rights to the motion pictures "And God Created Woman" and "Lady Chatterley's Lover". On October 23, 1957, the plaintiff entered into contracts with Thayer Amusement Company and Castle Enterprises, Inc., both Rhode Island corporations, for the simultaneous exhibition of the film "And God Created Woman". These contracts did not set forth any specific date upon which this picture would be shown, the contract providing that the plaintiff shall notify the exhibitor of the date when said motion picture would be available for exhibition by the exhibitor.

General Laws of Rhode Island 1956, § 5–22–4 in substance prohibits any theatrical performance without a license from the town council of the town in which such performance is sought to be given. Sec. 169 of Chapter 2721, Public Laws of Rhode Island 1951, provides that the bureau of licenses of the City of Providence shall have authority for the issuance of licenses as may be prescribed by law. There was testimony by a member of the bureau of licenses that the bureau had no right to delegate to the amuse-ment inspector its authority to determine whether or not a license would be granted. Sec. 166 of said Chapter 2721 provides that the bureau of licenses shall require an inspection, investigation and report by the police department on the application for any license.

There are two types of licenses which are issued by the Providence bureau of licenses for the showing of motion pictures. One is for Sunday exhibitions as provided under § 5–22–8 of the Rhode Island General Laws 1956, and the other is for weekday exhibitions under § 5–22–5. In order to facilitate the issuance of licenses the evidence disclosed that applications are signed in blank by the various theater managers. These applications are collected by a police lieutenant who is also the amusement inspector of the City of Providence. Prior to the actual performance the theater managers inform the amusement inspector of the names of the pictures which they intend to show on the following Sunday and the weekdays thereafter. The name of the picture to be shown on Sunday is then placed on the Sunday application but it does not appear on the application for the weekday license. The names of the pictures do not appear on either of the licenses.

Plaintiff introduced evidence showing that the amusement inspector after viewing the film "And God Created Woman" stated he would under no circumstances approve the picture. No evidence was presented that the exhibitors made any other attempt to apply to the bureau of licenses for a license to exhibit this particular motion picture. The customary practice appears to be for the theater manager to inform the amusement inspector on the Friday preceding the week during which a particular picture is to be shown the name of that picture in order that it may be placed on the application for Sunday licenses. In fact, plaintiff's witness, the manager of the Avon Theater, which is operated by the Thayer

1. The plaintiff's attorney stated in open court that "Lady Chatterley's Lover" would not be included in the motion for interlocutory injunction.

Amusement Company, testified that he did not consider that there was an application pending for a particular picture until he had informed the amusement inspector of the name of the picture to be shown. In the instant case there was no evidence presented by the plaintiff that the amusement inspector had been informed that "And God Created Woman" was going to be shown by an exhibitor at any particular time. Consequently there has never been an application made for a license to show this particular picture.

Thayer Amusement Corp. v. Moulton, 1939, 63 R.I. 182, 185, 7 A.2d 682, 124 A.L.R. 236, which concerned the Rhode Island licensing statute, clearly illustrates the manner in which application may be made to the licensing authorities in order that their denial may become the subject of judicial review. No justification was offered by the plaintiff for the exhibitor's failure to follow the procedure outlined in the Moulton case.

■ The principal challenge of the plaintiff is to the constitutionality of the Rhode Island licensing statute. The authority of this court to declare legislation of states to be unconstitutional is granted under 28 U.S.C. § 2281. This section is not " * * * a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 100; Beal v. Holcombe, 5 Cir., 1951, 193 F.2d 384.

■■ Even though a district court has authority to hear and decide a case on its merits, i. e. where the enforcement of an allegedly unconstitutional state statute is concerned, it should not invoke its powers unless those who seek its aid have a cause of action in equity. See Douglas v. City of Jeannette, 1943, 319 U.S. 157, 162, 163, 164, 63 S.Ct. 877, 87 L.Ed. 1324. The power of a court of equity to act is a discretionary one, and where a federal court of equity is asked to interfere with the enforcement of

state laws, it should do so only to prevent irreparable injury which is clear and imminent. American Federation of Labor v. Watson, 1946, 327 U.S. 582, 593, 66 S.Ct. 761, 90 L.Ed. 873.

■ The federal courts will not ordinarily interfere with a proceeding in a state court even if it is alleged that a state statute is unconstitutional. See Douglas v. City of Jeannette, supra, 319 U.S. at page 163, 63 S.Ct. at page 880. But there are circumstances where a three judge court will consider that there is an irreparable injury due to the enforcement of an unconstitutional statute. In Tyson & Brother United Theatre Offices v. Banton, 1927, 273 U.S. 418, 428, 47 S.Ct. 426, 427, 71 L.Ed. 718, it was held that there was equitable jurisdiction where there had been "threats on the part of appellees (state officials in charge of enforcing a state law regulating the charge to be made by ticket brokers to their customers) to enforce the statute against appellant, to forfeit its license, enforce the penalty of its bond and institute criminal prosecutions against appellant, its officers and agents."

■ Although in the instant case it is a third party who is allegedly denied the license rather than the plaintiff, the plaintiff's property rights may still be entitled to protection by a court of equity. See Kessler v. Eldred, 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065, where it was held that a court of equity could restrain a defeated plaintiff in an infringement suit from interfering with the business of the successful defendant by threatening to bring infringement suits against his customers. Thus, if the plaintiff in the instant case had proved that his customers (the exhibitors) had been prevented from leasing or induced not to lease plaintiff's picture because of the defendants' refusal of a license to these exhibitors, there would seem to be equitable grounds for enjoining the defendants. But here there was no evidence that the exhibitors had been refused a license by the bureau of licenses under color of the allegedly unconstitutional licensing statute.

■ It may be that on application to the bureau of licenses an exhibitor may receive a license for the exhibition of this film. It would be an unwise and injudicious act on our part to hold legislation unconstitutional where the complaining party may not be adversely affected by such legislation. See Bourjois, Inc., v. Chapman, 1937, 301 U.S. 183, 188, 57 S.Ct. 691, 81 L.Ed. 1027.

■ It is true that where a licensing statute is unconstitutional it may be challenged by a party who has not made application for a license thereunder and who has suffered an irreparable injury due to the operation of such statute. For example, in many of the cases upholding such challenge the aggrieved party had been subjected to prosecution because of the failure to obtain such license. See Staub v. City of Baxley, 1958, 355 U.S. 313, 319, 78 S.Ct. 277, 2 L.Ed.2d 302; Lovell v. City of Griffin, 1938, 303 U.S. 444, 452, 453, 58 S.Ct. 666, 82 L.Ed. 949; Smith v. Cahoon, 1931, 283 U.S. 553, 562, 51 S.Ct. 582, 75 L.Ed. 1264; Russo v. Reed, D.C.D.Me.1950, 93 F.Supp. 554. Such a situation is not present in the instant case.

Since the plaintiff has not presented evidence justifying the intervention of a court of equity, its motion for an interlocutory injunction is herewith denied and dismissed. In view of this disposition of the case it is unnecessary for us to consider the other issues raised in the plaintiff's motion for an interlocutory injunction.

■ Because the plaintiff presented evidence with regard to the first three causes of action we must treat the defendants' motion to dismiss, which in part was based on the alleged failure of the plaintiff to state a claim upon which relief could be granted, as a motion for summary judgment. F.R.Civ.P. 12(b) and 56, 28 U.S.C. Judgment, therefore, will be entered for the defendants on the three causes of action relating to the picture "And God Created Woman". As the plaintiff's complaint insofar as the three causes of action relating to the picture "Lady Chatterley's Lover" does state a claim upon which relief can be granted and as there is no failure to join indispensable parties, the defendants' motion to dismiss the complaint insofar as these three causes of action are concerned is denied.

MAGRUDER, Circuit Judge, dissents from the opinion and judgment of the Court and reserves the right to file a dissenting memorandum at a later date.

MAGRUDER, Circuit Judge (dissenting).

When the opinion of the court was announced on July 1, I noted my dissent, but reserved the right to file a dissenting memorandum at a later date.

It does not seem to me that the court should have granted defendants' motion to dismiss the complaint.

Complainant is seeking to invoke the equity powers of a federal court in a very delicate area, involving federal interference with local proceedings under a state statute. Therefore, as an original question, there is much to be said for the view that where, in an equity suit, an attack is made upon the constitutionality of a state statute, it ought not to matter whether the claim is made that the statute is "unconstitutional on its face" or is unconstitutional as applied in the particular case; in either event, a federal court should withhold equitable interference until the exhibitor has exhausted his administrative remedies by application for a license to show the picture made to the local body having the ultimate licensing authority under the terms of the statute.

But the Supreme Court has clearly held that where a state statute is "unconstitutional on its face", the equity powers of a federal court may be invoked without the preliminary necessity of resort to an unconstitutional administrative procedure. It is true that in many cases a litigant has been subjected to criminal prosecution in a state court and has defended on the ground that the applicable statute was "unconstitutional on its face"; upon conviction by the state courts, the Supreme Court of the

United States on final review has held itself free to entertain an attack upon the constitutionality of the statute despite the fact that the litigant had not availed himself of administrative procedures afforded by the state statute. See Lovell v. City of Griffin, 1938, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Smith v. Cahoon, 1931, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264. Such cases have nothing to do with the doctrine of exhaustion of administrative remedies, "the discretionary rule adopted by courts of equity to the effect that a petitioner will be denied equitable relief where he has failed to pursue an administrative remedy under which he might obtain the same relief". United States v. McCrillis, 1 Cir., 1952, 200 F.2d 884, 885. But it seems to me clear that the Supreme Court has gone further than this, in the line of cases in question, and has clearly sanctioned the exercise of federal equity powers where administrative remedies have not been exhausted, in the case of a state statute which the Supreme Court deemed to be "unconstitutional on its face", whether or not any criminal prosecution was pending in the state courts. See City of Chicago v. Atchison, Topeka & Santa Fe Ry. Co., 1958, 357 U.S. 77, 78 S.Ct. 1063, 2 L. Ed.2d 1174; Public Utilities Commission of State of California v. United States, 1958, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470. In Russo v. Reed, D.C.D.Me.S.D.1950, 93 F.Supp. 554, 558, a three-judge district court in this circuit, the two plaintiffs sought a temporary and permanent injunction against the enforcement of a state statute discriminating against nonresidents in the regulation of fishing in the coastal waters of Maine. While it is true a criminal prosecution was in progress in the state courts, the federal district court based its jurisdiction upon the following grounds: "Equitable jurisdiction in the premises on the ground of a threatened irreparable injury which is clear and imminent is obvious, for the loss of a season's fishing can not be restored, and the State of Maine provides no means for recovering damages in money to compensate for the loss occasioned by an illegal deprivation of the right to fish commercially within its coastal waters." If there is any basis for the Supreme Court's doctrine making it unnecessary for an individual to subject himself to the administrative procedures prescribed by an obviously unconstitutional statute, it seems clear that it should be applicable in an action of the type here involved. For if the exhibitor must first subject himself to criminal prosecution, by showing the picture without a license, it is only the unusual individual who will risk the penalties prescribed; and this is particularly true where, as here, the penalties are high and may be imposed for each violation. Cf. Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714.

Furthermore, assuming that a formal application by the exhibitor to the Providence Bureau of Licenses may be deemed important, the absence of such application would not in itself justify a final dismissal of the present complaint. Even the dissenting opinion in City of Chicago v. Atchison, Topeka & Santa Fe Ry. Co., supra, indicated that the federal district court should retain jurisdiction over the case pending prompt steps by Railroad Transfer Service to initiate license proceedings before the local authorities. No doubt the exhibitor in the present case would have done that if it had been given the opportunity. If the Bureau of Licenses had granted the application, that would have been an end of the case; on the other hand, if the Bureau had denied such application, then the present complaint could have been pressed before the federal district court, without the presence of the factor which has induced the majority of this court to dismiss the complaint finally.

So far, the Supreme Court has been unwilling to say that *all* prior censorship of the exhibition of motion pictures, inherent in a state system of licensing, is ipso facto unconstitutional under the Fourteenth Amendment. The area of permissible prior restraint in this field

remains somewhat cloudy, though the courts are continually seeking to resolve the interplay of conflicting considerations and thereby to formulate a sound standard. The relief sought by the plaintiff here is twofold: To have the licensing provisions of the statute declared unconstitutional, and to secure an injunction forbidding "the Defendants and each of them from taking any action or proceeding (by punitive action or otherwise) that will or may in any way interfere with the exhibition of the motion picture films entitled 'And God Created Woman' * * * in the City of Providence * * *." Counsel for plaintiff frankly conceded that an injunction against enforcement of the licensing provisions of the statute would probably not do the plaintiff any good unless the local exhibitors, who are not parties to this action, were at the same time protected by the injunction against the possibility of future criminal prosecutions under the obscenity statute. Therefore, the requested relief entails enjoining the enforcement of the following criminal statute:

"Circulation of obscene publications.—Every person who shall import, print, publish, sell, or distribute any book, pamphlet, ballad, printed paper, or other thing containing obscene, indecent, or impure language, or manifestly tending to the corruption of the morals of youth, or any print, picture, figment, or other description which is indecent, impure, or manifestly tending to the corruption of the morals of youth, or shall introduce into any family, school, or place of education, or shall buy, procure, receive, or have in his possession any such book, pamphlet, ballad, printed paper, or other thing, either for the purpose of sale, exhibition, loan, or circulation, or with intent to introduce the same into any family, school, or place of education, shall be imprisoned not exceeding two (2) years or be fined not exceeding one thousand dollars ($1,000) nor less than one hundred dollars ($100)." R.I.Gen. Laws 1956, § 11–31–1.

The relationship between a licensing statute and a criminal statute punishing obscenity suggests the impropriety of placing too much stress upon the phrase "prior restraint", for surely the mere existence of the foregoing stiff penal statute is as much a practical prior restraint as is the licensing statute. See, generally, Frank, J., concurring in United States v. Roth, 2 Cir., 1956, 237 F.2d 796, 810–811. Yet, since a federal court is naturally reluctant to interfere with a state's criminal processes, whether prosecution has been begun or not, the proper resolution of these competing factors remains in doubt and is one of the questions which lie under the surface of the present case. Another equally difficult question, which need be faced only if the court should be inclined to intervene in potential state proceedings, is the constitutionality of a statute defining obscenity in terms of its effect on the young. See Roth v. United States, 1957, 354 U.S. 476, 488–489, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

Since I would not have dismissed the present complaint, perhaps I ought to indicate briefly what action I would have taken on plaintiff's application for an injunction pendente lite. I would have denied this temporary relief.

Of course it is obvious that, so long as it is impossible to get the picture shown in the Providence area, the plaintiff cannot make any money out of the picture in that area. But does this involve any irreparable loss? If as a final result of these proceedings the picture is permitted to be shown, will the plaintiff ultimately recoup that loss? It is the plaintiff's theory that, due to further delay, at least some of this loss can never be made up. As the matter was put by one of the plaintiff's expert witnesses: "Over a period of time those who have not seen it lose interest in it. The wave of national publicity, the fashion which was to see it, is now gone." On the other hand, there is an inevitable element of speculation in

all this. Sometimes all the hullabaloo connected with the temporary banning of a picture will merely whet the public interest, so that the public will go to see the picture whenever the ban has been removed. This would very likely be so in the case of a picture which is justly reputed to contain elements of permanent worth. The picture "And God Created Woman" has been exhibited to the court, in a private showing, and without undertaking to say whether, in my opinion, the picture is "obscene" within the meaning of the Rhode Island statute, or within the standards laid down in Roth v. United States, supra, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, I must say that despite the plaintiff's claim of aesthetic and social significance, and of the enduring moral and ethical lessons the picture is said to contain, the basic box office appeal seems to be the exploitation of the figure of Brigitte Bardot. Hence I am prepared to believe that the losses which the plaintiff is presently suffering are indeed irreparable, especially since other pictures made by Miss Bardot, the distribution rights of which are owned by other distributors than the plaintiff, are presently being shown in the Providence area, and these other distributors are thus "cashing in" on the publicity build-up of Brigitte Bardot. It may well be that if the ban on the showing of "And God Created Woman" is eventually lifted, by that time the interest in Brigitte Bardot will have been sated, and those members of the public who would otherwise have been inclined to go to see the picture many months earlier will be chasing after some new rage.

However, in exercising our discretion on the awarding of temporary relief, it is relevant to consider that the effect of issuing a temporary injunction might be to give the plaintiff all the relief it would have obtained by an ultimate victory on the merits, and this before the court has had an opportunity to dispose of the merits; for a temporary injunction might enable the plaintiff to reap all profits possible to be derived from the Providence area, even before the court had disposed of the complaint on its merits. Considerations involving the public interest must outweigh any private embarrassment. See Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 500–501, 61 S.Ct. 643, 85 L.Ed. 971.