**Vincent M. GARACI et al., Plaintiffs,**

v.

**The CITY OF MEMPHIS et al., Defendants.**

**No. C–74–169.**

United States District Court, W. D. Tennessee, W. D.

April 19, 1974.

David E. Caywood, Memphis, Tenn., for plaintiffs.

Hugh Stanton, Jr., Dist. Atty. Gen., John A. Irvine, Asst. Dist. Atty., Memphis, Tenn., David Pack, Atty. Gen., Bart Durham, Asst. Atty. Gen., Nashville, Tenn., for State defendants.

Joseph B. Dailey, Asst. City Atty., Memphis, Tenn., for City of Memphis defendant.

Arthur J. Shea, Asst. City Atty., Memphis, Tenn., for Chief of Police defendant.

## ORDER

WELLFORD, District Judge.

This cause came on to be heard upon the complaint and upon the attached affidavits of plaintiffs and others, employees or prospective employees of plaintiffs, proposing to do or doing business at 1348 Madison Avenue in Memphis as Gaisha Bath House. The complaint seeks a declaratory judgment that certain Charter provisions or ordinances of the City of Memphis and certain Tennessee statutes are unconstitutional, either on their face or as applied, and also petitions for injunctive relief against continued enforcement or attempted enforcement thereof. Notice of hearing was given to defendants, the City of Memphis, its Mayor and Chief of Police, the District and State Attorneys General, and Governor Dunn with respect to the propriety of the extraordinary relief sought against them in the nature of a restraining order or an injunction. Defendants also submitted affidavits and memoranda in opposition to plaintiffs' petition for a restraining order and subsequently filed motions to dismiss after the hearing at which the parties through counsel were afforded an opportunity to be heard. In substance, defendants have objected that plaintiffs lack standing to be heard and that they are entitled, at most, to a declaratory judgment, not to extraordinary relief as prayed.

The complaint and affidavits submitted by or on behalf of plaintiffs assert that Garaci, Ash and Moore are owners of a Gaisha Bath House in Memphis and that Garaci purchased a business license as such on March 13, 1974, from both the City of Memphis and Shelby County under a business classification, 3–K, and that immediately thereafter they opened the so-called bath house for business. They further assert that a member of the Memphis Police Vice Squad visited the establishment on March 15, and presented an employee a letter addressed to a Mr. Hale, c/o "Magic Touch," 1348 Madison to the effect that "your permit has been denied for the reason that it has not been established that the operator is of good moral character," and warning that operation without such a permit would subject the addressee to arrest and a fine upon conviction.

Further, plaintiffs assert that the Vice Squad Sergeant advised them that the police would have the Gaisha Bath House of 1348 Madison closed and padlocked pursuant to nuisance laws of the City and State. After allegedly consulting with their attorney, in the face of this action, plaintiffs closed the operation in which their employees wash their patrons bodies and females bathe male patrons. Plaintiffs contend that threatened enforcement of Article 48 of the Memphis Charter styled "Massage Operators and Institutes," and T.C.A. 39–2901 et seq. styled "Public Nuisances—Disorderly Houses" would violate their civil rights as set out in 42 U.S.C. § 1983 and also provisions of the Equal Employment Opportunity section of the 1964 Civil Rights Act, as amended, 42 utes relied upon; and violate 14th ically assert the City Charter and state statute provisions [1] require sex discrimi-

---

1. Persons treated. It shall be a violation of this article for any operator to treat a person of the opposite sex, except upon the signed order of a licensed physician, or osteopath, which order shall be dated and shall specifically state the number of treatments, not to exceed ten, to be given, except as such treatments are given in the residence of the patient, the office of a physician, or in a hospital or sanitarium. The date and hour of each treatment given and the name of the operator shall be entered on such order and shall be subject to inspection by the police. Memphis Charter, § 438.7(2).

To maintain houses of ill fame, kept for the purposes of prostitution and lewdness, gambling houses, or houses where drunkenness, quarreling, fighting, or breaches of the peace are carried on or permitted, to the disturbance of others. T.C.A. 39–2901(4).

nation in conflict with the federal statutes relied upon; and violates 14th Amendment rights of equal protection and due process, being overly broad and vague. Additionally, plaintiffs aver that the laws in question are devoid of any compelling or necessary interest that they are not founded upon any rational basis or criteria, and also that they violate 9th Amendment rights of privacy. Finally, plaintiffs contend that the Charter provisions violate their constitutional rights in not providing any hearing in order to obtain a permit and that there is no right of review.[2]

### State's Motion to Dismiss

■ Plaintiffs rely upon the assertions of a City Police representation warning against operation of their "Bath House" with apparent reference to State nuisance laws relating to "houses of ill fame kept for the purposes of prostitution and lewdness" or disorderly houses. Nowhere do plaintiffs assert or claim any threatened action whatever by any officials of the County or the State under the public nuisance statute referred to. No one has been arrested under the state statute, and the warning allegedly given by the Police Officer had specific reference to the penalties of the City Charter provisions, not the State public nuisance statute. Plaintiffs are, in effect, asking this federal court to declare in advance whether their operation is or may be in violation of a state law dealing with public nuisances. The term "nuisance" is defined by a Tennessee court as that which gives offense to the senses, violates the laws of decency,

or obstructs the reasonable use of property,[3] and has been held to include noisy, boisterous and openly indecent conduct.[4] State officials would have to take action in order to convict any person of the criminal offense of operating or maintaining a public nuisance. Weidner v. Friedman, 126 Tenn. 677, 151 S.W. 56 (1912); Curtis v. State, 211 Tenn. 24, 362 S.W.2d 250 (1962); McCrowell v. Bristol, 73 Lea (Tenn.) 685 (1880). Plaintiffs' allegations against the State present no actual controversy because the intimations of threats of prosecution under state law are speculative and likely imaginary.

"Ordinarily, there should be no interference with such [State] officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." (emphasis ours) Fenner v. Boykin, 271 U.S. 240, 243, 244, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)

■ The instant case is unlike the situation in Dombrowski v. Pfister, 380 U.S. 479, 491, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) where an injunction was granted because threats were made without any expectation of securing a valid conviction but rather as a plan to harass negro citizens in the exercise of their undoubted rights. As construed in Younger v. Harris, 401 U.S. 37, 47, 50,

---

2. No person shall act as a massage operator or conduct a massage institute in the City of Memphis without first obtaining a permit as hereinafter provided from the chief of police. § 438.2, Memphis Charter.
Within ten (10) days after receipt of an application as provided for herein, the chief of police shall cause an investigation to be made of the applicant and his proposed operation. (Priv. Acts 1961, ch. 234, § 4). § 438.4, City Charter.
The chief of police shall issue a permit hereunder when he finds: (1) That the appli-

cant is of good moral character; (2) That the applicant has never been convicted of any felony or any offense against the decency and morals of the community; (3) That the applicant is a natural born or a fully naturalized citizen of the United States. (Priv. Acts 1961, ch. 234, § 5) § 438.5, City Charter.

3. Williams v. Cross, 16 Tenn.App. 454, 65 S. W.2d 198 (1932).

4. Weakley v. Page, 102 Tenn. 178, 52 S.W. 551 (1899).

91 S.Ct. 746, 27 L.Ed.2d 669 (1971), an injunction would lie only if a statute were on its face vague and overly broad as construed but also as applied to a particular litigant. There simply has been no application of the state statute to these plaintiffs nor even a threatened one by any state official. No assertion or showing is attempted to show bad faith or harassment by the State. As was said in Younger v. Harris, *supra*, p. 52, 91 S.Ct. p. 754, the task of analyzing a statute and pinpointing its deficiencies before the statute is put into effect as to a particular litigant "is rarely if ever an appropriate task for the judiciary." The statute in question challenged does not appear "patently violative of express constitutional prohibitions," and even if it were possibly unconstitutional (a holding we do *not* indicate), on its very face, there would be no justification for this Court's issuance of any extraordinary process. Younger v. Harris, *supra*, p. 54, 91 S.Ct. p. 755. See Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

Plaintiffs have failed even to allege, much less to demonstrate, any "genuine threat of enforcement" [5] against them of a disputed state statute, whether the attack were on the statute itself or upon its application to them. As was stated by Justice Stewart in Steffel, "the invocation of federal declaratory judgment jurisdiction" is not authorized "by a person who thinks a state criminal law is unconstitutional." Steffel v. Thompson, *supra*, 415 U.S. at 476, 94 S.Ct. at 1224. (Emphasis ours.) This is not that exceedingly rare situation of an actual threatened prosecution of a law of doubtful constitutionality, even if plaintiffs honestly have the belief they may in the future be prosecuted by the State under the public nuisance statute. Motions to dismiss on behalf of the Tennessee Governor, Attorney General, and the District Attorney General are therefore granted.

### City's Motion to Dismiss

■ Do plaintiffs have standing to challenge the constitutionality of the City Charter provisions in controversy under the related circumstances? Plaintiffs have obtained a license to do business, but they have not obtained nor have they attempted to obtain a permit required under Article 38 by a "massage operator" and a "massage institute." They have allegedly been threatened with City prosecution if they operate without such a permit.

For the reasons stated in the section dealing with State officials, this Court has declined to issue any restraining order or injunctive relief as requested to restrain and prohibit the City from enforcing Article 48 as it may pertain to these plaintiffs. There has been no showing of bad faith harassment by the City without hope of conviction under facially and obviously unconstitutional ordinances for the purpose of chilling plaintiffs' constitutional rights. No restraining order or injunction will therefore issue in this cause.

Nowhere do plaintiffs assert that the Gaisha Bath House is intended or has been intended to operate as a massage parlor or a massage institute. License has been obtained to operate under the general classification, seller of services,[6] but what services do plaintiffs intend to sell? T.C.A. § 67–4203, Item 10, dealing with state and local privilege taxes, imposes a special tax on "barber shops" and "bath houses." [7] The City Charter and ordinances do not specifically deal with "bath houses" as they do with "massage houses," and the City nuisance charter provision has to do with public health and hazards,[8] unlike the state statute.

---

5. Steffel v. Thompson, *supra*, 415 U.S. at 476, 94 S.Ct. 1209.

6. T.C.A. § 67–5805 (Classification 3–K) deals with business taxes, and § 5804(p) defines "services" as every activity engaged in by a person for profit.

7. City Charter Sec. 411.

8. See Ragio v. State, 86 Tenn. 272, 6 S.W. 401 (1888).

A "massage" is defined in 55 C.J.S. p. 981 as "A method of treating the superficial soft parts of the body for remedial or hygienic purposes, consisting of rubbing, stroking, kneading, tapping, etc., with the hand or an instrument; a rubbing and kneading of the body." It would not appear necessarily to be a method, procedure or treatment provided in a bath house nor appurtenant to a bath house within any common meaning of that term, unless washing with a sponge or bathing could reasonably come within the meaning of a "massage." That other matters might be anticipated or intended within the guise of a "bath" or a "massage", see Dunlop v. United States, 165 U.S. 486, 501, 17 S.Ct. 375, 41 L.Ed. 799 (1897).

■ Though plaintiffs may feel genuinely "chilled" in their alleged constitutional freedom by the existence of the City Charter provision in controversy, and subjectively believe it to be unconstitutional, federal declaratory relief is not warranted except in the case of an actual and concrete dispute concerning its applicability by one specifically affected thereby. Steffel v. Thompson, supra. Plaintiffs have been threatened with respect to arrest unless they obtain a permit; they have never sought such a permit. Plaintiffs have not, therefore, justified the intervention even by way of declaratory judgment of this Court as a matter of equity, since it has not been demonstrated that, if an application were made under the Charter provision, it would necessarily and in bad faith be rejected. Kingsley Inter. Pic Corp. v. City of Providence, 166 F.Supp. 456 (D. R.I.1958) (three judge court). It is not presumed that the City or its police officials will act in bad faith.

■ If the Charter is not invalid on its face, in any event, the failure of plaintiffs to make application for a permit would prevent their complaint about anticipated improper action on the part of City officials. Smith v. Cahoon, 283 U.S. 553, 562, 51 S.Ct. 582, 75 L.Ed. 1264 (1931). No attempt has been made to enforce these Charter provisions by actual arrest of plaintiffs nor

has the City (or its defendant officials) actually sought to padlock plaintiffs' establishment. Russo v. Reed, 93 F.Supp. 554 (D.Me.1950) is therefore distinguishable. It cannot be said that the City Charter provisions in question are invalid or unconstitutional on their face, as in Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Staub v. Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L. Ed.2d 302 (1958), or Smith v. Cahoon, supra. Most, if not all cases cited permitting the right to challenge an ordinance or statute prior to applying for such permit deal with and involve actual arrest and interference with freedom of speech or first amendment rights. This is not the instant case or situation, as plaintiffs seek to do business for profit without complying with an ordinance which does not on its face appear patently unconstitutional.

■ The Court is aware that other district courts have construed an ordinance provision similar to Memphis Charter Section 4387(2) to be invalid with reference to 42 U.S.C. § 2000e–2(a)(2). Cianciolo v. Knoxville, 376 F. Supp. 719 (E.D.Tenn.1974); Joseph v. House, 353 F.Supp. 367 (E.D.Va.1973); Corey v. City of Dallas, 352 F.Supp. 977 (N.D.Tex.1972). Each of these cases involved the operator of a purported "massage parlor;" plaintiffs in this case do not purport to be. In Corey v. Dallas, supra, p. 982, the court acknowledged that "the city could regulate the administering of massages in detail by requiring the licensing . . ." This is exactly what is sought to be accomplished in the Memphis Ordinance. See Patterson v. City of Dallas, 355 S.W.2d 838 (Tex. Civ.App.1962), appeal dismissed 372 U. S. 251, 83 S.Ct. 873, 9 L.Ed.2d 732 (1963). Both Corey and Cianciolo v. Knoxville, supra, recognize that the City and State may regulate and control massage parlors within legitimate exercise of police power. See 17 A.L.R.2d 1183. It is also clear that the Equal Protection clause is not violated by a city or state's treating different classes of persons in different ways provided such classifications are reasonably related to legiti-

mate legislative objectives. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225 (1971); McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Not only is there a rational basis for the classification prescribed in the Memphis Ordinance, there is also in our opinion a substantial state interest in the reasonable regulation of public morals and business activities affecting the public welfare (as involved in the ordinance in question). Judge Taylor concluded in Cianciolo v. Knoxville, *supra*, that the Knoxville ordinance did "not comply with the spirit, if not the letter, of Section 2000e–2 of the Civil Rights Act."

There has been no allegation or showing that any plaintiff has filed a complaint or charge with the Equal Employment Opportunity Commission with respect to any sex discrimination involved as was the case in Joseph v. House, *supra*, 353 F.Supp. see p. 375. This was apparently considered a prerequisite to a consideration of the alleged sex discrimination application of the ordinance in that case. The Court does not consider that the intendment of the Title VII provision (42 U.S.C. § 2000e–2) was to apply to this type of situation, and it is not clear to the Court on its face that Memphis Charter provision 438.7(2) is invalid on the basis of this federal statute.

Plaintiff has no valid claim of an alleged unconstitutional invasion of privacy. "This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 65, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446 (1973). The Court in Slaton noted that commercial ventures conducted in the public forum are not properly within the penumbra of the right of privacy. See also Harris v. United States, 315 A.2d 569 (D.C.App. Cir. Feb. 11, 1974) (en banc). As in *Harris*, plaintiff's activities are public in nature and are therefore not protected by the right of privacy.

Finally, in view of the serious doubts as to the plaintiffs' standing on its claim with respect to the City of Memphis, and since it appears that the statutes and charter provisions are not invalid on their face, consideration of abstention is appropriate. There has been no effort to employ procedures available under the Civil Rights Act with the Equal Employment Opportunity Commission. Plaintiffs do not purport to be massage operators, and police notification to an unknown third party (Hale) at plaintiffs' address is no evidence of any bad faith actions on the part of defendant City officials. This Court concludes that it should therefore abstain from any consideration of the issues herein presented under the circumstances related. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

The Three Judge Court will not be requested to convene since this cause is dismissed for the reasons stated as to all defendants. See Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971).

The defendants' motions are granted and this case is dismissed at plaintiffs' costs.