# SUPREME COURT OF THE UNITED STATES

## CHRISTOPHER L. WILSON *v.* HAWAII

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
COURT OF HAWAII

No. 23–7517.   Decided December 9, 2024

The petition for a writ of certiorari is denied.

Statement of JUSTICE THOMAS, with whom JUSTICE ALITO joins, respecting the denial of certiorari.

In *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, 597 U. S. 1 (2022), we singled out Hawaii's firearms-licensing regime as "analog[ous]" to the New York regime we held unconstitutional. *Id*., at 15. We explained that States cannot condition an individual's exercise of his Second Amendment rights on a showing of "special need." *Id*., at 70–71. Yet, the Hawaii Supreme Court ignored our holding in the decision below. See 154 Haw. 8, 543 P. 3d 440 (2024). It instead stated that petitioner Christopher Wilson could not invoke the Hawaii regime's unconstitutionality as a defense in his criminal proceedings because he had never applied for a license. That conclusion contravenes the settled principle that Americans need not engage in empty formalities before they can invoke their constitutional rights, and it wrongly reduces the Second Amendment to a "second-class right." *McDonald* v. *Chicago*, 561 U. S. 742, 780 (2010) (plurality opinion). Although the interlocutory posture of the petition weighs against correcting this error now, I would grant certiorari in an appropriate case to reaffirm that the Second Amendment warrants the same respect as any other constitutional right.

## I

In December 2017, police arrested Wilson after he wandered onto private property while hiking. At the time, he was carrying a loaded pistol without a license. The county

prosecutor charged him with misdemeanor criminal tres-pass and firearms offenses. These offenses included charges for carrying guns and ammunition in public with-out a license. See Haw. Rev. Stat. §§134–25, 134–27 (2011).

At the time, Hawaii had a "may issue" licensing regime. That regime allowed local police chiefs to grant licenses in narrow circumstances, but left the ultimate decision to their discretion. A police chief could grant a concealed-carry license only if the applicant had shown that he had an "exceptional case," with "reason to fear injury to [his] person or property." §134–9(a). And, a police chief could grant an open-carry license only if the applicant had shown "urgency" or "need," "good moral character," and that he would be "engaged in the protection of life and property." *Ibid.* The result of this scheme was that very few Hawai-ians could obtain licenses: In 2017, the year of Wilson's ar-rest, Hawaii police granted zero licenses to private citizens. See Dept. of the Atty. Gen., Firearm Registrations in Ha-waii, 2017, p. 9 (May 2018), https://ag.hawaii.gov/cpja/files/2018/05/Firearm-Registrations-in-Hawaii-2017.pdf.

Wilson persuaded the Circuit Court to dismiss his unlicensed-carry charges. The Circuit Court recognized that Hawaii's near-total restrictions on public carry could not be squared with *Bruen*, and it accordingly held that prosecuting Wilson for unlicensed carry would violate the Second Amendment and the parallel provision in Article I, §17, of the Hawaii Constitution.

The Hawaii Supreme Court disagreed. See 154 Haw. 8, 543 P. 3d 440. It spent the bulk of its opinion explaining why the Hawaii Constitution does not confer an individual right to bear arms, with analysis that doubled as a critique of this Court's Second Amendment jurisprudence. The court specifically took aim at our focus on original meaning. See *id.*, at 19–23, 543 P. 3d, at 451–455. Bemoaning the policy consequences, the court asserted that an originalist interpretation of the Second Amendment "disables the

states' responsibility to protect public safety, reduce gun violence, and safeguard peaceful public movement," by putting firearms restrictions "mostly out of bounds." *Id.*, at 22, 543 P. 3d, at 454. And, it denigrated the need for public carry in particular, rejecting as un-Hawaiian "a federally-mandated lifestyle that lets citizens walk around with deadly weapons." *Id.*, at 27, 543 P. 3d, at 459. On the Hawaii Supreme Court's view, a sounder approach to constitutional interpretation would give due regard to the "spirit of Aloha" and would preclude any individual right to bear arms, or at least subject it to "levels of scrutiny and public safety balancing tests." *Id.*, at 21, 27, 543 P. 3d, at 453, 459.

Remarkably, the Hawaii Supreme Court's recognition of the "federally-mandated" right to public carry disappeared when it turned to Wilson's Second Amendment defense. There, the court invoked state standing law to avoid any meaningful Second Amendment analysis. It held that, because Wilson had not applied for a license and had not been charged with violating the licensing statute itself (which was not a criminal statute), he lacked standing to challenge the particulars of the licensing regime. *Id.*, at 12–13, 543 P. 3d, at 444–445. Instead, he could argue only that the Second Amendment categorically forbids state licensing regimes. Because that is not the case, the court held, Hawaii's prohibitions on unlicensed carry "do not graze Wilson's Second Amendment right." *Id.*, at 27, 543 P. 3d, at 459.

## II

The decision below is the latest example of a lower court "fail[ing] to afford the Second Amendment the respect due an enumerated constitutional right." *Silvester* v. *Becerra*, 583 U. S. 1139, 1140 (2018) (THOMAS, J., dissenting from denial of certiorari). As this Court has repeatedly emphasized, "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights

guarantees.'" *Bruen*, 597 U. S., at 70 (quoting *McDonald*, 561 U. S., at 780 (plurality opinion)). So, the Hawaii Supreme Court cannot single out the Second Amendment for disfavor, even if it does not believe that "right is *really worth* insisting upon." *District of Columbia* v. *Heller*, 554 U. S. 570, 634 (2008).

By invoking state standing law to dodge Wilson's constitutional challenge, the Hawaii Supreme Court failed to give the Second Amendment its due regard. To be sure, a state-law standing determination ordinarily is an adequate and independent state ground precluding our review. But, as this Court has elsewhere recognized, only "constitutionally proper" rules can create adequate and independent state grounds. *Trevino* v. *Thaler*, 569 U. S. 413, 421 (2013).

The Hawaii Supreme Court should have asked the threshold question whether the Second Amendment allows state standing law to restrict the defenses that criminal defendants facing firearms-related charges may raise. The answer is "no," as our case law on constitutional challenges to licensing regimes makes clear.

A defendant can always raise unconstitutionality as a defense "where a statute is invalid upon its face and an attempt is made to enforce its penalties in violation of constitutional right." *Smith* v. *Cahoon*, 283 U. S. 553, 562 (1931). A "long line of precedent" confirms this point. See, *e.g.*, *City of Lakewood* v. *Plain Dealer Publishing Co.*, 486 U. S. 750, 755–757 (1988) (collecting cases).

Thus, a state-law holding that a defendant "lacked standing to attack the constitutionality of the ordinance because [he] made no attempt to secure a permit under it" is "not an adequate nonfederal ground of decision" where the "ordinance . . . on its face violates the Constitution." *Staub* v. *City of Baxley*, 355 U. S. 313, 319 (1958). This is true where, as here, an individual waits to raise the issue until "he is prosecuted for failure to procure" a license. *Thornhill* v. *Alabama*, 310 U. S. 88, 97 (1940). And, it is true even if the

defendant's "conduct could be proscribed by a properly drawn statute." *Freedman* v. *Maryland*, 380 U. S. 51, 56 (1965).

Our rejection of state procedural restrictions on the invocation of constitutional defenses follows from the fact that constitutional rights are "self-executing prohibitions on governmental action." *City of Boerne* v. *Flores*, 521 U. S. 507, 524 (1997). A constitutional violation accrues the moment the government undertakes an unconstitutional act. For example, a violation of the Takings Clause occurs "at the time of the taking." *Knick* v. *Township of Scott*, 588 U. S. 180, 194 (2019). And, the availability of state-law compensation remedies cannot delay or undo the accrual of a takings claim. See *id.*, at 193–194.

The same principles apply to the Second Amendment. That Amendment is similarly self-executing, and a State transgresses it as soon as the State implements a licensing regime that is inconsistent with the Nation's "historical tradition of firearm regulation." *Bruen*, 597 U. S., at 17. Judicial review of a license denial may be one way that an individual can challenge state overreach. But, because the constitutional violation occurs as soon as an individual's right to bear arms is inhibited, States cannot mandate that would-be gun owners go through an unconstitutional licensing process before they may invoke their Second Amendment rights. Any other rule would impermissibly demote the Second Amendment "to the status of a poor relation" among constitutional rights. *Knick*, 588 U. S., at 189 (internal quotation marks omitted).

Had the Hawaii Supreme Court followed its duty to consider the merits of Wilson's defense, the licensing scheme's unconstitutionality should have been apparent. We have made clear that the Second Amendment is a right "guaranteed to all Americans," whose exercise cannot be conditioned on a showing of "special need." *Bruen*, 597 U. S., at

70–71 (internal quotation marks omitted). Yet, in restricting license eligibility to Hawaiians with "'exceptional case[s],'" or who otherwise could show special "urgency" or "need," the Hawaii regime did just that. Hawaii's onerous restrictions closely paralleled those in the New York regime we held unconstitutional in *Bruen*. See *id.*, at 13–15, and n. 2; see also *id.*, at 79 (KAVANAUGH, J., concurring) (recognizing that *Bruen*'s holding applied to all States with "'may-issue' regimes"); *Young* v. *Hawaii*, 45 F. 4th 1087, 1092 (CA9 2022) (en banc) (O'Scannlain, J., dissenting) ("we need not conduct the [*Bruen*] inquiry now because the Supreme Court has already done it for us").

The Hawaii regime's obvious unconstitutionality may be why the Hawaii Legislature has since amended the State's licensing statute to create a "shall issue" regime, at least for concealed carry. The new regime allows any applicant who meets certain baseline requirements to obtain a license without any "special need" limitation. See 2023 Haw. Sess. Laws no. 52, §7, p. 126 (codified at Haw. Rev. Stat. §134–9(a)).

Had the Hawaii Supreme Court followed the legislature's lead and tried to give effect to our Second Amendment jurisprudence, it would have found the licensing regime at issue unconstitutional and upheld the dismissal of Wilson's public-carry charges. The court's contrary path "resist[s] our decisions," *Rogers* v. *Grewal*, 590 U. S. ___, ___ (2020) (THOMAS, J., dissenting from denial of certiorari) (slip op., at 3), and demotes the Second Amendment to a "second-class right," *McDonald*, 561 U. S., at 780 (plurality opinion). This Court cannot tolerate "such blatant defiance" in any constitutional context. *Rogers*, 590 U. S., at ___ (slip op., at 5).

## III

All this said, correction of the Hawaii Supreme Court's error must await another day. Wilson moved to dismiss

only some of his charges, most notably leaving for trial a trespassing charge on which his Second Amendment defense has no bearing. He thus seeks review of an interlocutory order over which we may not have jurisdiction. See 28 U. S. C. §1257(a); *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469, 476–487 (1975). I agree with the Court's decision to deny certiorari in this posture.

In an appropriate case, however, we should make clear that Americans are always free to invoke the Second Amendment as a defense against unconstitutional firearms-licensing schemes. Perhaps Wilson himself will present that case, should he file a post-trial petition for certiorari. Regardless, this issue is an important and recurring one. See, *e.g.*, Brief in Opposition 14–16, and n. 2 (collecting cases); cf. *Baughcum* v. *Jackson,* 92 F. 4th 1024, 1035 (CA11 2024) (recognizing, for Article III standing purposes, that litigants did not need to make the "futile gesture" of first applying for a carry license, where "they do not meet the state's requirements for license holders"). And, this Court's intervention clearly remains imperative, given lower courts' continued insistence on treating the Second Amendment "right so cavalierly." *Silvester,* 583 U. S., at 1140 (opinion of THOMAS, J.).

# SUPREME COURT OF THE UNITED STATES

## CHRISTOPHER L. WILSON *v.* HAWAII

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF HAWAII

No. 23–7517.   Decided December 9, 2024

Statement of JUSTICE GORSUCH respecting the denial of certiorari.

In December 2017, Christopher Wilson went for a nighttime hike with friends in the West Maui Mountains. The group strayed onto private property, and the owner called the police. When the police arrived, they searched Mr. Wilson and found he had a handgun—but not a license to carry one in public. So Hawaii prosecuted Mr. Wilson for trespass and for carrying a firearm in public without a license. Mr. Wilson moved to dismiss the gun-related charges against him, arguing that Hawaii's prosecution violated the Second Amendment by unduly restricting his right to carry a firearm for self-defense. The circuit court agreed with Mr. Wilson and granted his motion. But, after the State pursued an interlocutory appeal, the Hawaii Supreme Court reversed.

The Hawaii Supreme Court's decision raises serious questions. For one, the court failed to address Mr. Wilson's contention that Hawaii's prosecution is inconsistent "with this Nation's historical tradition of firearm regulation" and so defies the Second Amendment. See *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, 597 U. S. 1, 17 (2022); *United States* v. *Rahimi*, 602 U. S \_\_\_ (2024) (slip op., at 6–7). Instead, the court simply asserted, "States retain the authority to require that individuals have a license before carrying firearms in public." 543 P. 3d 440, 459 (Haw. 2024). That much is surely true. But it's just as true that state licensing regimes can sometimes be so restrictive that they violate the Second Amendment. *Bruen*, 597 U. S., at 38–39, n. 9.

And the court never analyzed whether Hawaii's law crossed that line in this case.

For another, the Hawaii Supreme Court's reason for declining to consider the merits of Mr. Wilson's defense poses questions of its own. The court observed that Hawaii charged Mr. Wilson with violating two statutes—§134–25 and §134–27. Respectively, those laws forbid carrying handguns and ammunition in public without a license. Haw. Rev. Stat. §§134–25, 134–27 (2011). And, the court continued, those charges did not, as a matter of state law, afford Mr. Wilson standing to challenge a distinct statute, §134–9, regulating the issuance of licenses to carry guns and ammunition in public. After all, the court stressed, the State had not charged Mr. Wilson under §134–9, nor had he pursued the civil administrative process available for citizens seeking a public-carry license. See §134–9.

The trouble with this line of reasoning, as Mr. Wilson notes, is that the two statutes under which he was charged work hand-in-glove with the third. In fact, §134–25 and §134–27 expressly incorporate §134–9, providing that guns and ammunition may not be carried in public "[e]xcept as provided in . . . 134–9." See §§134–25, 134–27. And, as Mr. Wilson sees it, the charges against him under the first two statutes are constitutionally problematic because the exceptions in the third are not broad enough to accommodate the demands of the Second Amendment. Put another way, Mr. Wilson argues that the three statutes together—the prohibitions, even when read in light of the exceptions—restrict his right to carry in public for self-defense purposes more than the Constitution allows. Because the Hawaii Supreme Court failed to grapple with that argument, Mr. Wilson now seeks review here.

It is perhaps an understandable request. This Court does not generally review decisions premised on state law like the Hawaii Supreme Court's standing analysis in this case. But under the Constitution and our precedents, it is this

Court's role to ensure that "criminal defendants [enjoy] a meaningful opportunity to present a complete defense." *Holmes* v. *South Carolina*, 547 U. S. 319, 324 (2006) (internal quotation marks omitted). The Fourteenth Amendment's Due Process Clause and the Sixth Amendment, this Court has said, guarantee that opportunity by precluding state-law rules that "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate." *Ibid.* (internal quotation marks omitted, alteration in original). Applying that standard, the Court has repeatedly found unconstitutional the application of state-law "rules that exclud[e] important defense evidence but that d[o] not serve any legitimate interests." *Id.*, at 325; accord, *Chambers* v. *Mississippi*, 410 U. S. 284, 295 (1973).

To be sure, this case isn't a carbon copy of *Holmes* or *Chambers*. In those disputes, the Court faced state-law rules excluding the admission of evidence rather than a state-law rule precluding the presentation of a constitutional defense. But it's unclear how that distinction might help Hawaii's cause. Either type of state law threatens to deprive a criminal defendant of "a fair opportunity to defend against the State's accusations." *Chambers*, 410 U. S., at 294. Admittedly, too, this Court once approved a "wartime emergency measure" preventing criminal defendants from challenging the validity of an administrative rule underlying the charges against them because they could have challenged the rule in earlier civil administrative proceedings. *Yakus* v. *United States*, 321 U. S. 414, 429–431 (1944). But it's difficult to see how a decision "motivated by the exigencies of wartime," *United States* v. *Mendoza-Lopez*, 481 U. S. 828, 838 n. 15 (1987), might be extended beyond that context. All of which seemingly returns us to the usual rule that criminal courts are obliged to consider all "proper issues, whether of law or of fact, relating to the validity of the law for violation of which the defendant[] [is] charged." *Yakus*, 321 U. S., at 480 (Rutledge, J., dissenting).

In saying that much, I do not mean to suggest Mr. Wilson's Second Amendment defense has merit. I observe only that no one knows the answer to that question because the Hawaii Supreme Court failed to address it. And that failure invites with it the distinct possibility that Mr. Wilson may be convicted of, and ordered to serve time in prison for, violating an unconstitutional law.

Still, it may not be too late to avoid that result. Mr. Wilson's case has not yet proceeded to trial, let alone through the post-judgment appellate process. The Hawaii Supreme Court issued its ruling in the course of an interlocutory appeal. And often courts revisit and supplement interlocutory rulings later in the course of proceedings. Perhaps the Hawaii Supreme Court will take advantage of that opportunity in this case. If not, Mr. Wilson remains free to seek this Court's review after final judgment.